**LITTLE EARTH OF UNITED TRIBES, INC., a Minnesota Nonprofit Corporation, and Little Earth Tenants' Committee, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Samuel R. Pierce, Jr., in his capacity as Secretary, United States Department of Housing and Urban Development (HUD), John Doe and Mary Roe, Agents and Officials of HUD, and Donald Omodt, in his capacity as Sheriff of Hennepin County, Defendants.**

Civ. No. 3–82–1096.

United States District Court,
D. Minnesota,
Third Division.

Aug. 15, 1983.

Larry Leventhal, Minneapolis, Minn., for Little Earth of United Tribes.

Randall Smith, Minneapolis, Minn., for Little Earth Tenants' Committee.

Francis X. Hermann, Asst. U.S. Atty., Minneapolis, Minn., Sarah E. Canzoneri and Geoffrey Patton, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the court is the federal defendants' motion for summary judgment as to plaintiffs' civil rights claims. Larry Leventhal, Esq., appeared for plaintiff Little Earth of United Tribes, Inc. (LEOUT) and Randall Smith, Esq., appeared for plaintiff

Little Earth Tenants' Committee, now entitled Little Earth Residents' Council (Residents' Council). Francis X. Hermann, Assistant United States Attorney, Sarah E. Canzoneri, Esq. and Geoffrey L. Patton, Esq., appeared for defendants U.S. Department of Housing (HUD), Samuel R. Pierce, Jr., Secretary of HUD, John Doe and Mary Roe (the federal defendants).

I

## INTRODUCTION

LEOUT and the Residents' Council filed this action on April 13, 1982. The complaint contains numerous unnumbered paragraphs alleging that HUD was arbitrary, capricious and in violation of national housing policy in its administration of the Little Earth Housing Project and its ultimate decision to foreclose. Based on these alleged violations, plaintiffs sought declaratory relief and a permanent injunction enjoining foreclosure by HUD. Plaintiffs also alleged violations by defendants of 42 U.S.C. § 2000d et seq. (Title VI of the Civil Rights Act of 1964), 42 U.S.C. §§ 3601, et seq., 3608(d)(5) (Title VIII of the Civil Rights Act of 1968), 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and the due process clause of the U.S. Constitution.

On June 27, 1983, the court granted summary judgment in favor of the defendants on plaintiffs' claim that the alleged administrative action violations constituted a defense to foreclosure by HUD, 584 F.Supp. 1287. It therefore vacated the temporary restraining order then in effect and denied defendants' motion for appointment of a receiver. Plaintiffs' motions for partial summary judgment and for preliminary injunctions restraining the foreclosure sale, "relating to management" and restraining transfer of monies now in Little Earth's section 8 reserve account were also denied. Defendants' motions for summary judgment on the civil rights claims were reserved for later decision.

The court has now considered those motions and concludes that summary judgment is inappropriate as to plaintiffs' claims for injunctive and declaratory relief under Title VIII, Title VI, 42 U.S.C. §§ 1981, 1982, 1985(3) and the 5th Amendment to the United States Constitution. Plaintiff's claim for $2 million dollars in damages under these provisions is, however, barred by the doctrine of sovereign immunity and must be dismissed. Finally, the § 1983 claim must be dismissed for lack of subject matter jurisdiction.

II.

## DISCUSSION

### A. *Fifth Amendment*

■ To establish a constitutional violation, plaintiffs must prove that HUD officials acted with a discriminatory purpose. *See Personnel Administrator v. Feeney*, 442 U.S. 256, 272–81, 99 S.Ct. 2282, 2292–97, 60 L.Ed.2d 870 (1979); *Wyatt v. Pierce*, No. 82–1383, slip op. at 4 (8th Cir., filed June 28, 1983). Defendants argue that summary judgment should be granted as to plaintiffs' fifth amendment claim because discriminatory purpose has not been pleaded and, in any case, such discriminatory intent could not be proved.[1] The court disagrees.

First, the complaint is replete with allegations that defendants' administration of Little Earth and ultimate decision to foreclose was the result of racial bias and an intent to discriminate against American Indians. For example, in Section XIV of the complaint, entitled "HUD Violations of Civil Rights," plaintiffs allege that the decision by HUD officials not to allot flexible subsidy funds to the project was "motivated by the racially discriminatory practices and beliefs of certain HUD officials who did not wish to spend monies on a project that would be utilized in the future by American Indians..." Complaint, unnumbered page 30, 2nd full par.

---

1. Defendants also argue that the Residents' Council lacks standing, but the court has disposed of this contention in its earlier order. See Order of this Court dated June 27, 1983.

Second, the issue of HUD officials' intent involves numerous questions of fact which preclude summary judgment. *See Snell v. United States*, 680 F.2d 545, 547 (8th Cir. 1982). As the Court of Appeals has recently noted, the determination of the existence of a discriminatory purpose requires a "sensitive inquiry" into the "totality of the relevant facts." *Wyatt v. Pierce*, No. 82–1383, slip op. at 4 (citations omitted). Factors which the court should explore include not only the effect of the challenged decisions, but the "historical background, the sequence of events leading up to the challenged decisions, the departures from the normal procedural sequence, the substantive departures from the norm, and the alternatives that were available." *Id.* at 5. The final test is whether the challenged actions could not "reasonably be explained without reference to racial concerns." *Id., quoting Columbus Board of Education v. Penick*, 443 U.S. 449, 461, 99 S.Ct. 2941, 2948, 61 L.Ed.2d 666 (1979).

Applying these tests in *Wyatt*, the court found that HUD officials' failure to follow-up on numerous irregularities in the Texarkana housing project, including the facts that the project had been almost totally segregated since its inception in 1948 and that white applicants were on waiting lists nearly 46 days less than blacks, constituted the discriminatory intent required for a fifth amendment violation. *Wyatt*, slip op. at 34. Although the allegations in this case are dissimilar, the *Wyatt* court's discussion of the inquiry required for a constitutional claim illustrates the inappropriateness of summary judgment on plaintiffs' fifth amendment claim.

### B. Title VIII of The Civil Rights Act of 1968

Plaintiffs also allege that defendants' actions in refusing to respond to rent increase requests, making unreasonable demands, and dealing in bad faith are violative of Section 801 of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, which states that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." Under § 3608(d)(5), furthermore, the Secretary of HUD has an affirmative duty to administer housing and urban development programs in a manner that will further the policies of fair housing.

The scope of review of agency action under Title VIII is narrow. HUD has great discretion in choosing methods to achieve national housing goals, but its action will be overturned if found to be arbitrary and capricious within the meaning of Section 706(2)(a) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a). *Wyatt*, slip op. at 38; *Shannon v. HUD*, 436 F.2d 809 (3d Cir.1970); *King v. Harris*, 464 F.Supp. 827 (E.D.N.Y.1979).

In *Wyatt*, the court held that its finding that HUD had committed a constitutional violation mandated a conclusion that it had not met its responsibility to promote fair housing. No. 82–1383, slip op. at 37. A constitutional violation is not a prerequisite to a violation of Title VIII, however; all that is required is proof that HUD failed to carry out its affirmative duty to " 'institute action the direct result of which was to be the implementation of the dual and mutual goals of fair housing and the elimination of discrimination in that housing.' " *Banks v. Perk*, 341 F.Supp. 1175, 1182 (N.D.Ohio 1972), *aff'd in part, rev'd in part on other grounds*, 473 F.2d 910 (6th Cir.1973), *quoted in Wyatt*, slip op. at 38. Since the parties vigorously dispute many of the relevant facts, the court cannot say at this stage of the litigation that HUD has met its duty under Title VIII. Summary judgment is therefore inappropriate.

### C. Title VI of the Civil Rights Act of 1964

Summary judgment is equally inappropriate as to plaintiffs' claim under Title VI. Section 601, 42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in,

be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

Federal agencies are required by section 602, 42 U.S.C. § 2000d–1 to enforce section 601. Under section 602, each agency must issue rules and regulations consistent with the objectives of section 601 and effect compliance by (1) termination of or refusal to grant funding assistance, or (2) any other means provided by law. Section 603, 42 U.S.C. § 2000d–2, authorizes judicial review of agency actions taken pursuant to section 602 "in accordance with section 10 of the Administrative Procedure Act." A case can be remanded to HUD for further administrative proceedings if the agency's actions are found to be irrational, unsupported by the record, or an abuse of discretion. *Adams v. Richardson,* 480 F.2d 1159, 1163 (D.C.Cir.1973) (en banc) cited in *Wyatt,* slip op. at 34–35 n. 22.

As the *Wyatt* court recently observed, although courts are generally in agreement that a private cause of action exists under Title VI against a federal funding recipient, *see, generally, id.* n. 23, a controversy exists whether a private cause of action also exists against a federal funding agency. *Id.* at 35. Finding that "HUD is liable to the plaintiffs regardless of how we answer the questions raised under the statute," the *Wyatt* court declined to reach not only the private cause of action question but also the questions whether exhaustion of administrative remedies is required and what standard is appropriate to establish a Title VI violation. *Id.* at 36 and n. 25.

Defendants argue that summary judgment should be granted on the Title VI claim because no private cause of action exists against a federal funding agency under the statute. Although a few courts have so held, *see, e.g. NAACP v. Medical Center, Inc.,* 599 F.2d 1247, 1254 n. 27 (3d Cir.1979), the better reasoned opinions hold otherwise, at least as applied to cases such as this where plaintiffs allege that the agency itself has violated the federal statute. *See Montgomery Improvement* *Ass'n, Inc. v. United States Department of Housing and Urban Development,* 645 F.2d 291, 294–97 (5th Cir.1981) (black city residents have an action under Title VI against both the City of Montgomery and HUD for failure to administer the Housing Assistance Plan in a non-discriminatory manner); *Garrett v. City of Hamtramck,* 503 F.2d 1236 (6th Cir.1974) (Where HUD officials were aware of discriminatory impact of housing plan they approved they may be held responsible under Title VI); *Gautreaux v. Romney,* 448 F.2d 731, 732 (7th Cir.1971) (Same standard applies in Title VI action against HUD as in actions against local housing authority); *Young v. Pierce,* 544 F.Supp. 1010, 1015 (E.D.Tex. 1982) (Where HUD is alleged to have knowingly acquiesced in racially discriminatory practices of East Texas local housing authority, it may be held responsible under Title VI.)

■■ In light of this wealth of authority, the court finds that summary judgment on the ground that no private cause of action exists against a federal agency under Title VI may not be granted. Furthermore, although discriminatory intent does seem to be required to establish a claim under Title VI, *see Cannon v. University of Chicago,* 648 F.2d 1104 (7th Cir.1980), this requirement does not support defendants' motion for summary judgment. As noted earlier, the question of intent is a factual one particularly inappropriate for summary disposition.

D. *Sections 1981, 1982, 1983 and 1985(3)*

1. *Existence of Cause of Action against Federal Officials*

As defendants apparently concede, a cause of action exists against federal officials and agencies under sections 1981 and 1982, subject to the rules of sovereign immunity discussed below. *See Taylor v. Jones,* 653 F.2d 1193 (8th Cir.1981); *Penn v. Schlesinger,* 490 F.2d 700 (5th Cir.1973). These statutes provide that all persons within the jurisdiction of the United States shall have equal rights to "make and en-

force contracts," (§ 1981) and "to lease real property" (§ 1982). They contain no state action requirement, but do require proof of discriminatory intent. *See Taylor v. City of St. Louis,* 702 F.2d 695, 697 (8th Cir. 1983). Plaintiffs have raised sufficient disputed facts on this element to preclude summary judgment.

 Dismissal is proper, however, as to the section 1983 claim. Section 1983 applies only to persons acting under "color of state or territorial law"; it does not authorize redress against federal agencies or officials who were acting under federal law as were defendants here. *Williams v. Rogers,* 449 F.2d 513 (8th Cir.1971). Federal officials may be liable under § 1983 if the alleged violation is the product of a conspiracy between state and federal officials. *See Hampton v. Hanrahan,* 600 F.2d 600, 623 (7th Cir.1979). This exception applies only when the state officials are alleged to have played a significant role in the challenged actions, *see Kletschka v. Driver,* 411 F.2d 436, 449 (2d Cir.1969), a standard not here met. The only state participation in the alleged violation is the Hennepin County Sheriff's conduct of the foreclosure sale, an essentially ministerial task which has not even yet occurred.

 Finally, plaintiffs have stated a claim for which relief can be granted and raised sufficient factual issues to preclude summary judgment under § 1985(3). Although the complaint is in narrative form, the following requisite elements of a section 1985(3) action are included: (1) a conspiracy; (2) to deprive any person or class of persons of equal protection under the laws; (3) an act by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Since the Supreme Court's holding in *Griffin* that § 1985(3) applies to private conspiracies, *id,* at 105, 91 S.Ct. at 1800, the majority of courts have held that it also applies to federal officials. *See, e.g., Dry Creek Lodge, Inc.*

*v. United States,* 515 F.2d 926 (10th Cir. 1975); *Peck v. United States,* 470 F.Supp. 1003, 1008–13 (S.D.N.Y.1979); *Stith v. Barnwell,* 447 F.Supp. 970 (M.D.N.C.1978); *Alvarez v. Wilson,* 431 F.Supp. 136 (N.D. Ill.1977). *But see Seibert v. Baptist,* 594 F.2d 423 (5th Cir.1979) *on reh'g,* 599 F.2d 743 *cert. den.* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271.

### 2. *Sovereign Immunity*

In paragraph 9 of the prayer for relief, plaintiffs request the following:

> That the defendants be awarded from the individual defendants herein Samuel R. Pierce, Jr., Joe Doe and Mary Doe, for their respective violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985(3) and the civil rights of plaintiffs, their members, and tenants the sum of two million ($2,000,000 and no/100) dollars.

 Although plaintiffs refer to the individual defendants in this paragraph, they have, in fact, sued all defendants in their official capacities. Any monies awarded would therefore have to be paid from public funds and the suit must be considered one against the sovereign. *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed.2d 1209 (1947). As such, the damages claim is barred unless the United States has specifically consented to such a suit. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

While apparently not disputing that neither the civil rights statutes nor the constitution provides such a waiver, *see Hayes v. Federal Bureau of Investigation,* 562 F.Supp. 319, 322 (S.D.N.Y.1983), plaintiffs contend that the required waiver is contained in two statutes, 42 U.S.C. § 1404a and 12 U.S.C. § 1702. The following "sue and be sued" clause is contained in 12 U.S.C. § 1702:

> The Secretary shall, in carrying out the provisions of this subchapter [I] and subchapters II, III, V, VI, VII, VIII, X, IX–A and IX–B of this chapter [the National Housing Act] be authorized in his

official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

The legislative history of this provision provides no assistance in its interpretation, *see* S.Rep. No. 1007, 74th Cong., 1st Sess. (1935), H.R.Rep. No. 1822, 74th Cong., 1st Sess. (1935), but the Supreme Court did discuss the statute shortly after its enactment, in *F.H.A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).

In *Burr*, the Court held that § 1702 authorized a garnishment action against the Federal Housing Administration for monies due an employee. Execution of the judgment was, however, limited to "those funds which have been paid over to the Federal Housing Administration in accordance with § 1 and which are in its possession, severed from Treasury funds and Treasury control..." 309 U.S. at 250, 60 S.Ct. at 492. In so holding the Court noted that the Secretary had been "launched ... into the commercial world" 309 U.S. at 245, 60 S.Ct. at 490, and should be amenable to suit in that context.

Following *Burr*, a number of courts have interpreted § 1702 as a waiver of immunity in suits by contractors relating to the construction of housing projects financed under the act. *See, e.g., Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 179 (8th Cir.1978); *Industrial Indemnity Inc. v. Landrieu*, 615 F.2d 644 (5th Cir.1980). Even in the commercial context, however, several courts have limited the waiver to suits seeking funds which have already been allocated to a project, holding that suits for damages were barred because they would require diversion of funds already appropriated for another purpose or appropriation of funds from the general treasury. *See, e.g., United States v. Adams*, 634 F.2d 1261 (10th Cir.1980); *Armor Elevator Co., Inc. v. Phoenix Urban Corp.*, 493 F.Supp. 876, 883 (D.Mass.1980).

The limited waiver contained in § 1702 is similarly inapplicable here. Any monies awarded for claimed civil rights violations would either have to be diverted from funds appropriated for another pur-

pose or from the general treasury, not from a separate fund already within the possession and control of HUD. Waivers of sovereign immunity are to be strictly construed. *Hurley v. United States*, 624 F.2d 93 (10th Cir.1980). To construe § 1702 as a waiver of immunity in civil rights suits for monetary damages is to violate the rule of *Burr* and to extend the provision far beyond its intended meaning. *See Unimex, Inc. v. H.U.D.*, 594 F.2d 1060, 1061 (5th Cir.1979) (§ 1702 does not constitute a waiver of sovereign immunity in a civil rights action alleging racial discrimination in the processing of an application for a subsidized mortgage for a housing project under 12 U.S.C. § 17151(d)(3).)

Plaintiffs cite *Abrams v. Hills*, 547 F.2d 1062 (9th Cir.1976) and *Baker v. F & F. Investment Co.*, 489 F.2d 829, 833–34 (7th Cir.1973) in support of their contention that § 1702 constitutes a waiver. In *Baker*, the court does specifically so hold, but the opinion contains no discussion of the *Burr* holding and the court finds it unpersuasive. *See* 489 F.2d at 833–34. *Abrams* is inapposite since the plaintiffs were not seeking damages based on violations of the civil rights statutes, but review of administrative decisions. 547 F.2d at 1064. The court did order HUD to pay operating subsidies retroactively to the date upon which the section 236 operating subsidy program should have been implemented at the project in question. Such relief does not constitute damages, however, but equitable restitution. The holding that § 1702 does not amount to a waiver of sovereign immunity for monetary relief under the civil rights laws and the constitution does not foreclose such relief if it should be found warranted. That question is not now before the court.

The court is also unpersuaded that 42 U.S.C. § 1404a operates here as a waiver of sovereign immunity. Section 1404a provides:

The United States Housing Authority may sue and be sued only with respect to its functions under this chapter and sections 1501 and 1505 of this title.

The functions, powers and duties of the Housing Authority have been transferred to the Secretary of HUD. 42 U.S.C. § 3534(a). Nevertheless the same rationale which renders § 1702 inapplicable to a suit for monetary damages under the civil rights law also prevails with respect to § 1404a. *Cf. U.S. v. Adams*, 634 F.2d at 1265.

Plaintiffs have cited one case where § 1404a was held to constitute a waiver of sovereign immunity so that HUD could be joined in an action under §§ 1983, 1985(3) and the fifth and fourteenth amendments. *Lopes v. Arraras*, 606 F.2d 347 (1st Cir. 1979). The *Lopes* opinion, however, contains but a brief discussion of sovereign immunity. Furthermore, the court specifically reserved the question of fashioning relief through rent credits or future congressional appropriations. 606 F.2d at 353–54. Purely monetary damages such as those sought by plaintiffs were not sought by the plaintiffs in *Lopes*.

In the many other cases involving suits against HUD, any mention of monetary damages for civil rights violations is noticeably absent. In the *Wyatt v. Pierce* case discussed above, for example, the court notes that the original complaint contained allegations under 42 U.S.C. §§ 1981, 1983 and 1985(3) and the fourteenth amendment, but that these had been dropped and a fifth amendment claim added. No. 82–1383, slip. op. at 3, n. 7. Despite evidence and an ultimate holding that HUD's actions with respect to the Texarkana housing project represented a ' "clear error of judgment" that is in fact unlawful,' *id.* at 38 (citation omitted), no damages were sought and none were awarded. Rather, the Court of Appeals remanded the case to the district court with directions to fashion a specific remedy sufficient to correct the effects of past discrimination. *Id.*

Similarly, in *Gautreaux v. Romney*, 448 F.2d 731 (7th Cir.1971),[2] a suit by black tenants of a Chicago housing project against the Secretary of HUD for knowing acquiescence in racially discriminatory practices, only injunctive and declaratory relief has been sought or awarded. *See also Garrett v. City of Hamtramck*, 503 F.2d 1236, 1247 (6th Cir.1974).

Although §§ 1404a and 1702 do not constitute a waiver of sovereign immunity with respect to the civil rights statutes and constitutional claims, the actions themselves are not entirely barred, as defendants argue. Under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948) and its progeny, specific relief may be obtained in a suit against a government agency or officer sued in his official capacity if (1) the officer's actions were ultra vires or (2) the officer was acting unconstitutionally or pursuant to an unconstitutional grant of power from the sovereign. *Id.* at 689–90, 69 S.Ct. at 1461–62; *Clark v. United States*, 691 F.2d 837, 840 (7th Cir.1982). The court agrees with the holding of *Penn v. Schlesinger*, 490 F.2d 700, 705 (5th Cir. 1973) that racially discriminatory actions by federal officials would fall within either or both of these exceptions. Thus, if plaintiffs successfully proved any of their civil rights claims, specific relief which does not work an intolerable burden on the government would be available. *See Larson*, 337 U.S. at 691, n. 11, 69 S.Ct. at 1462, n. 11; *Taylor v. Jones*, 653 F.2d 1193, 1207 (8th Cir.1981); *Clark*, 691 F.2d at 840–841 n. 5 & 6.

Defendants do not contend that this exception would not apply here on the facts, but that it does not apply because plaintiffs do not seek injunctive and declaratory relief on the civil rights claims. This argument is based on an overly narrow reading of the complaint and prayer for relief which the court does not accept.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment as to the claim for $2,000,000 damages for alleged violations of the civil

---

**2.** The case has been in litigation for nearly 20 years and has given rise to numerous published opinions. *See Gautreaux v. Pierce,* 690 F.2d 616, 620 n. 1 (7th Cir.1982).

rights statutes and the constitution, as contained in paragraph 9 of the prayer for relief is granted;

2. Defendants' motion for summary judgment as to the claim under 42 U.S.C. § 1983 is granted; and

3. Defendants' motions for summary judgment are in all other respects denied.