**Amelia COBB and Diana Saly, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION OFFICE FOR CIVIL RIGHTS, Defendant.**

**Civil File No. 05–2439 (MJD/AJB).**

United States District Court, D. Minnesota.

March 27, 2007.

Leah C. Janus, Lora Esch Mitchell, and S. Jamal Faleel, Fredrikson & Byron, PA, Minneapolis, MN, Counsel for Plaintiffs Amelia Cobb and Diana Saly.

Mary J. Madigan, Assistant United States Attorney, Counsel for Defendant United States Department of Education Office for Civil Rights.

## MEMORANDUM OF LAW & ORDER

DAVIS, District Judge.

## I. INTRODUCTION

This matter is before the Court on Defendant United States Department of Education Office for Civil Rights' Motion to Dismiss. [Docket No. 28] The Court heard oral argument on March 2, 2007.

## II. FACTUAL BACKGROUND

On October 19, 2005, Arthur H. Cobb and George L. Saly filed a Complaint against Defendant United States Department of Education ("DOE"), Office for Civil Rights ("OCR"), and various other federal officials in their official capacities. Arthur Cobb and George Saly are fathers of current Plaintiffs Amelia Cobb and Diana Saly, in the past, played interscholastic girls' hockey in Minnesota. OCR is an office of the DOE whose mission is to ensure equal access to education. OCR is responsible for enforcing Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681.

The factual allegations are fully set forth in the Court's June 16, 2006 Order. [Docket No. 12] Generally, Arthur Cobb and George Saly alleged that Minnesota State High School League (the "League" or "MSHSL") did not provide boys and girls with equal access to comparable competitive facilities during the final round of the state hockey tournament. MSHSL is a recipient of federal funding. They further alleged that, despite numerous complaints to OCR, OCR approved the League's decision to continue to hold the girls' tournament at the inferior facility for two years, and then to move the girls' tournament to another inferior facility.

Saly and Cobb both filed a number of complaints with OCR arguing that the girls' venue was not equal. OCR responded that, under its own policy interpretation, the League was only required to provide facilities that were equal or equal in effect. OCR repeatedly closed Saly's and Cobb's complaints.

As the result of an unrelated class action brought against the League by female high school ice hockey players, in 2004 the League agreed to hold the girls' tournament at the Xcel Energy Center beginning in 2006.

On June 16, 2006, the Court issued an Order concluding that Arthur Cobb and George Saly lacked standing to pursue their claims against Defendants because they were not injured by OCR's conduct. On September 18, 2006, the Court granted the Motion to Intervene by Amelia Cobb and Diana Saly and dismissed Arthur Cobb and George Saly. [Docket No. 24]

On September 29, 2006, Plaintiffs Amelia Cobb and Diana Saly filed an Amended Complaint against Defendant OCR only. The Amended Complaint alleges Count I,

violation of equal protection under 42 U.S.C. § 1983; Count II, unequal treatment and benefits under Title IX; and Count III, conspiracy (with the League) to violate 42 U.S.C. § 1985(3) by depriving Plaintiffs' of their right to equal treatment under the law.

In conjunction with their response to this motion to dismiss, Plaintiffs have submitted a proposed Second Amended Complaint against OCR, Margaret Spellings, Algis Tamosiunas, Judith E. Levitt, Linda A. McGovern, and Mark Erickson. Spellings is the Secretary of the DOE and the other individual Defendants are OCR employees. The proposed Second Amended Complaint alleges, against all Defendants, Count I, violation of equal protection under 42 U.S.C. § 1983; Count II, unequal treatment and benefits under Title IX; Count III, conspiracy in violation of 42 U.S.C.1985(3); and Count IV, violation of the Fifth Amendment of the United States Constitution.

OCR now moves to dismiss the Amended Complaint on the grounds of lack of subject matter jurisdiction.

## III. DISCUSSION

### A. Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

 The Government has filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction. *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir.2006).

> In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the

motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

*Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993) (citations omitted). In a factual challenge, the Court may examine evidence outside of the complaint. *Id.*

In this case, the Government mounts a facial challenge to jurisdiction. The Court first examines whether Title IX provides a private cause of action against a federal funding agency, such as OCR. It next discusses whether OCR has sovereign immunity from Plaintiffs' § 1983 and § 1985 claims. Finally, it addresses Plaintiffs' request to amend their Amended Complaint.

### B. Sovereign Immunity Under Title IX

#### 1. Introduction

In Count II, Plaintiffs allege unequal treatment and benefits under Title IX. Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681(a).

Both parties agree that the plain language of Title IX does not create a cause of action against a federal funding agency. The Court must determine, however, whether Title IX creates an implied right of action against a federal funding agency. The Court notes that Title IX's language does not expressly create *any* private right of action, yet, in *Cannon v. University of Chicago*, the Supreme Court found that a private right of action against a funding recipient was implied. 441 U.S. 677, 683, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

### 2. Cannon v. University of Chicago

■ In *Cannon v. University of Chicago*, the Supreme Court held that Title IX provides an implied private right of action for an individual claiming injury due to an educational institution's unlawful sex discrimination and that the claimant may sue the institution and obtain relief. 441 U.S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The *Cannon* court did not decide whether Title IX created a private cause of action against a federal funding agency. However, both parties point to dicta in *Cannon* to support their claims.

The Government notes, for instance, that the Supreme Court stated that permitting individuals to directly sue a discriminating funding recipient would be less disruptive than requiring the individual to sue the funding agency "under the Administrative Procedure Act to compel the agency to investigate and cut off funds." *Id.* at 708 n. 41, 99 S.Ct. 1946 (citations omitted). The court also stated that Congress's final version of Title VI, on which Title IX is modeled, "appears to have been a compromise aimed at protecting individual rights without subjecting the Government to suits." *Id.* at 715–16, 99 S.Ct. 1946 (footnote omitted). In a footnote, the Supreme Court explained that the final form of Title VI

> was far more conducive to implication of a private remedy against a discriminatory recipient than was the original language, but at the same time was arguably *less* conducive to implication of a private remedy against the Government (as well as the recipient) to compel the cutoff of funds. Although willing to extend private rights against discriminatory recipients, the Government may not have been anxious to encourage suits against itself.

*Id.* at 716 n. 51, 99 S.Ct. 1946.

In context, the above Supreme Court dicta indicate that the court believed that Title VI and, by extension, Title IX, do not create an implied right of action for an individual to sue a federal funding agency to compel the agency to cut off federal funds to a discriminating recipient. The dicta do not address whether Title IX permits a lawsuit against a federal agency when the agency *itself* violates Title IX. In fact, the Supreme Court did acknowledge that private lawsuits against federal funding agencies had previously been allowed under Title VI and explained that such cases "are accordingly consistent, at least, with the widely accepted assumption that Title VI creates a private cause of action." *Cannon*, 441 U.S. at 703, n. 33, 99 S.Ct. 1946 (citing *Hills v. Gautreaux*, 425 U.S. 284, 286, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976)).

### 3. Analogous Case Law

There is no binding precedent deciding whether a private right of action against a federal funding agency exists under Title IX. Cf. *Clients' Council v. Pierce*, 711 F.2d 1406, 1423–25 (8th Cir.1983) (discussing, but not deciding, whether there is an implied right of action against a federal funding agency under Title VI). The Court then turns its analysis to other case law, noting that Title VI analysis is a relevant guide in analyzing Title IX. *Rodgers v. Magnet Cove Pub. Schs.*, 34 F.3d 642, 644 (8th Cir.1994).

The Court acknowledges that some other courts have concluded that no such cause of action exists under Title VI. For instance, in *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir.1999), the Fourth Circuit relied on the dicta in *Cannon* to determine that no such cause of action existed. Having closely examined the *Cannon* decision, the Court respectfully disagrees with the line of cases holding that *Cannon* implies that no cause of action can exist under Title VI

or Title IX against a federal funding agency that is itself accused of violating the statute. As previously discussed, the Court interprets *Cannon* as merely indicating disapproval of an implied cause of action to force the federal funding agency to terminate funds to a discriminating recipient. *See, e.g., Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C.Cir.1990) (noting that, post-*Cannon*, "[a] federal agency itself might be charged with discrimination, or, as provider of financial assistance, with facilitating or encouraging a specific fund recipient's discrimination") (citations omitted).

■ The Court concludes that a private right of action against federal funding agencies exists when the funding agency itself is accused of acting to violate Title IX and foster discrimination. *See, e.g., Montgomery Improvement Ass'n, Inc. v. U.S. Dept. of Housing & Urban Dev.*, 645 F.2d 291, 295 (5th Cir.1981) (holding plaintiffs possessed private cause of action against HUD under Title VI); *Gautreaux v. Romney*, 448 F.2d 731, 740 (7th Cir. 1971) (upholding Title VI lawsuit against Secretary of HUD for perpetrating racially discriminatory conduct) (citation omitted).

■ A cause of action exists when the funding agency served as a joint actor and assisted the funding recipient by nurturing the discriminatory conduct. *Young v. Pierce*, 544 F.Supp. 1010, 1015 (E.D.Tex. 1982) ("To the extent a plaintiff asserts that the federal agency is violating the terms of the federal statute, by abdicating an affirmative duty to eliminate discrimination, then the action is properly brought against the agency. In such a circumstance, the agency is a partner in discrimination, and may be held responsible for this complicity.") (citations omitted). Title IX creates an affirmative duty for OCR to eliminate discrimination based on sex in the education setting. As the *Young* court

explained, "This private right of action against the federal funding agency is implied ... according to precisely the same logic which justifies the private right of action against the recipient of federal aid." *Id.* at 1017 (citation omitted). This Court's conclusion follows previous opinions in this District. *See, e.g., Little Earth of United Tribes, Inc. v. U.S. Dept. of Housing & Urban Dev.*, 584 F.Supp. 1292, 1297 (D.Minn.1983) (denying summary judgment on Title VI claim against HUD on the grounds that plaintiffs alleged that "the agency itself has violated the federal statute").

■ In this case, Plaintiffs assert that although the State Fair Coliseum venue was admittedly not comparable to the site where the boys' hockey tournament was held, OCR approved the League's request to hold the girls' hockey tournament at the State Fair Coliseum in 2001 and 2002. Plaintiffs assert that OCR lent its imprimatur to MSHSL's ongoing discriminatory behavior and ensured that the discriminatory practices would continue. Plaintiffs also allege that MSHSL's decision to continue to hold the girls' tournament at the State Fair Coliseum in 2001 and 2002 was guided by OCR's approval and that the League would have held the tournament in a different location if so directed by OCR. *Cf. Hicks v. Weaver*, 302 F.Supp. 619, 623 (E.D.La.1969) ("HUD was not only aware of the [segregation] situation ... but it effectively directed and controlled each and every step in the program. Nothing could be done without its approval. HUD thus sanctioned the violation of plaintiffs' rights and was an active participant since it could have halted the discrimination at any step in the program. Consequently, its own discriminatory conduct in this respect is violative of 42 U.S.C.2000d.").

Plaintiffs' allegations in this case fall within the "narrow circumstances involving

allegations that the agency has 'consciously and expressly' abdicated its enforcement duties, that it acquiesced or actively participated in discriminatory practices, or that it has wrongly refused to pursue further action when efforts to achieve voluntary compliance have failed." *Marlow v. U.S. Dept. of Educ.*, 820 F.2d 581, 583 (2d Cir. 1987) (citations omitted). The Court concludes that OCR's alleged conduct is in line with those decisions permitting a private right of action against a funding agency under Title VI when the agency fosters discriminatory behavior. Recognizing a private right of action against OCR in this case furthers Title IX's purpose of both avoiding the use of federal funds to support discrimination and "provid[ing] individual citizens effective protection against [discriminatory] practices." *Cannon*, 441 U.S. at 704, 99 S.Ct. 1946.

The Court denies the Government's motion to dismiss Plaintiffs' Title IX claim.

### C. Section 1983 Claim

In Count One, Plaintiffs bring a claim against OCR under 42 U.S.C. § 1983, alleging that OCR violated their right to equal protection under the Fourteenth Amendment.

■ Section 1983 only applies to persons acting under color of State law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Although a § 1983 claim can be sustained against joint federal and state actors acting under color of state law, such as suit must involve claims brought against individual federal government officers, not against an agency. *Kletschka v. Driver*, 411 F.2d 436, 448–49 (2d Cir.1969). The federal agency itself is immune from suit. *See, e.g., Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105–06, 1107 (D.C.Cir. 2005) (holding that a federal agency is not a "person" subject to § 1983 liability). Because there are no individual defendants

named and no agency has waived sovereign immunity, Plaintiffs' cause of action fails. The Court dismisses Plaintiffs' § 1983 claim.

■ Although no individual defendants are named in the current Amended Complaint, Plaintiffs seek leave to file a Second Amended Complaint that names a number of OCR officials and the Secretary of the Department of Education. The Court denies the request to amend the Amended Complaint to add a § 1983 claim against the individual Defendants; the proposed amendment would be futile because Plaintiffs do not allege a state action. The cases upon which Plaintiffs rely, such as *Kletschka*, hold that a § 1983 claim can lie when federal and state actors act together under state law. However, here, Plaintiffs seek to allege that federal and state actors acted together under color of federal law.

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. The requirement of state action in suits for alleged deprivation of civil rights preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. The injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible.

*Parker v. Boyer*, 93 F.3d 445, 447–48 (8th Cir.1996) (citations omitted).

■ No claim lies under § 1983 when the actions are taken under color of federal law. Section 1983 applies only to persons acting under "color of state or territorial law"; it "does not authorize redress against federal agencies or officials who

were acting under federal law." *See Little Earth of United Tribes, Inc. v. U.S. Dept. of Housing & Urban Dev.,* 584 F.Supp. 1292, 1298 (D.Minn.1983) (citing *Williams v. Rogers,* 449 F.2d 513, 517 (8th Cir. 1971)). *See also Mullen v. United States,* No. 92–1047, 1992 WL 125339, at *2 (8th Cir. June 10, 1992) (unpublished) (holding plaintiff failed to state § 1983 claim against federal prosecutor because statute "is inapplicable to persons acting under color of federal law") (citation omitted).

## D. Section 1985(3) Claim

In Count Three, Plaintiffs assert conspiracy with the MSHSL under 42 U.S.C. § 1985(3) to deprive Plaintiffs and other female high school hockey players in Minnesota of equal protection of the laws by discriminating based on gender. The statute provides:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To state a claim under the equal protection provisions of the first part of § 1985(3), [a plaintiff] must allege (1) a conspiracy, (2) for the purpose of depriving another of the 'equal protection of the laws, or of equal privileges and immunities under the laws;' (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right. A claim under this part of the section also requires proof of a class-based animus. In addition, [the plaintiff] must allege that an independent federal right has been infringed. Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights. The source of the right or laws violated must be found elsewhere.

*Federer v. Gephardt,* 363 F.3d 754, 757–58 (8th Cir.2004) (citations and footnotes omitted).

■ Section 1985(3) does not confer liability on a federal agency because the United States is not a "person" within the meaning of § 1985(3). *Mousseaux v. United States,* 28 F.3d 786, 787 (8th Cir. 1994) ("The United States is not subject to suit under section 1985(3).") (citation omitted). Plaintiffs' § 1985(3) claim is dismissed.

Plaintiffs also seek to amend the Amended Complaint to add § 1985(3) claims against the individual Defendants. "Unlike 42 U.S.C. § 1983, which requires that the offending action be done under the color of state law (meaning the law of one of the states comprising the Union), the scope of § 1985(3) is considerably broader and can reach conspiracies composed of federal officers or federal employees." *Federer,* 363 F.3d at 758 (citation omitted).

■ The Government argues that Plaintiffs have not met their pleading burden to adequately allege a conspiracy. At this early stage of the litigation, based solely on the proposed pleadings and keeping in mind that Federal Rule of Civil Procedure 8(a) merely requires "a short and plain statement," the Court concludes that Plaintiffs have adequately pled a conspiracy under § 1985(3) such that the pro-

posed amendment does not appear to be futile. The Court permits Plaintiffs to amend their Amended Complaint to add § 1985(3) claims against the individual Defendants.

### D. Plaintiffs' Request to Amend Their Amended Complaint

Plaintiffs request permission to amend their Amended Complaint to assert claims under the Fifth Amendment against OCR and the individual Defendants, to assert the current counts against the individual Defendants, and to eliminate unnecessary allegations contained in the initial complaint filed by pro se plaintiffs. The Government states that it opposes the proposed amendment.

#### 1. Standard

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." However, "permission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief, or if she is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk,* 340 F.3d 605, 616 (8th Cir.2003) (citation omitted).

#### 2. Analysis

There is no pretrial scheduling order yet in this case, so the deadline to amend the complaint has not yet passed. The Government has not established "undue delay, bad faith, dilatory motive" or undue prejudice arising from the proposed amendments.

As the Court has already concluded, addition of the individual Defendants would be futile for Plaintiffs' § 1983 claim and the § 1983 claim against the Government is dismissed. The Title IX claim against the Government remains and addi-

tion of the individual Defendants to that claim does not appear to be futile. Although Plaintiffs' § 1985(3) against the Government is dismissed, Plaintiffs may amend their Amended Complaint to assert that claim against the individual Defendants. Finally, the addition of a Fifth Amendment claim does not appear to be futile against the Government and the individual Defendants, although, to the extent Plaintiffs are asserting a *Bivens* action, OCR is not a proper *Bivens* defendant due to sovereign immunity. *Schutterle v. United States,* 74 F.3d 846, 848 (8th Cir. 1996).

Thus, Plaintiffs are granted permission to amend their Amended Complaint, with the exceptions noted above.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant United States Department of Education Office for Civil Rights' Motion to Dismiss [Docket No. 28] is **GRANTED IN PART** and **DENIED IN PART** as follows:

 a. Count I, violation of equal protection under 42 U.S.C. § 1983, is **DISMISSED.**

 b. Count II, unequal treatment and benefits under Title IX, **REMAINS,** and

 c. Count III, conspiracy to violate 42 U.S.C. § 1985(3) is **DISMISSED.**

2. Plaintiffs' request to amend their complaint is **GRANTED IN PART** and **DENIED IN PART** as follows: Plaintiffs' request is **GRANTED** with the exception that

 a. Plaintiffs are **DENIED** permission to include a claim under § 1983;

 b. Plaintiffs are **DENIED** permission to assert a claim under 42 U.S.C. § 1985(3) against Defendant United

States Department of Education Office for Civil Rights; and

c. Plaintiffs are **DENIED** permission to assert a *Bivens* claim against Defendant United States Department of Education Office for Civil Rights.