VANN et al. v. TOLEDO METROPOLI-
TAN HOUSING AUTHORITY.

Civ. No. 6989.

United States District Court,
N. D. Ohio, W. D.

June 23, 1953.

Jas. Slater Gibson and Robert V. Frank-
lin, Jr., Toledo, Ohio, for plaintiffs.

Morton C. Seeley and Richard A. Mc-
Clure, Toledo, Ohio, for defendant.

KLOEB, District Judge.

This action was brought by the plaintiffs
to obtain a mandatory injunction against
the defendant to compel it to accept their
applications and to admit them to occupan-
cy as tenants in public housing facilities lo-
cated in what is known as the East Side in
the City of Toledo, which are managed and
controlled by the defendant.

Plaintiffs are members of the Negro race
and allege denial of their applications and
discrimination against them because of their
race, in violation of their civil rights under
Title 8, §§ 41, 42 and 43, and Title 28, §
1343(3), of the United States Code Anno-
tated. Section 42 reads as follows:

"Property rights of citizens

"All citizens of the United States
shall have the same right, in every
State and Territory, as is enjoyed by
white citizens thereof to inherit, pur-
chase, lease, sell, hold, and convey real
and personal property."

The plaintiffs are members of a large
class and this case was presented and is
being considered as a class action.

The defendant is a public housing agency,
as defined in Title 42, § 1402 (11) of the
United States Code Annotated, and is an in-
strumentality of the State of Ohio, as pro-
vided in § 1078–29 et seq., of the General
Code of Ohio.

Under the applicable law, the proper
management and operation of the public
housing facilities under the jurisdiction of
the defendant are entirely within the au-
thority and judgment of the defendant,
with which the Courts will not interfere,
when operated according to law.

Whatever question there may have been
at the time of the commencement of this
action as to whether the civil rights of the
plaintiffs and others of the same class were
being violated by a policy of segregation in
screening eligible applicants to said hous-
ing projects by the defendant, that has been
removed by the action of the defendant
since the filing of the complaint herein, in
adopting its Resolution No. 1871, relating
to the subject, and reading as follows:

"Resolution No. 1871

"Whereas, the Toledo Metropolitan
Housing Authority did on January 8,
1953, adopt Resolution No. 1838 provid-

ing for adopting a policy of non-segregation or integration in the low-income projects operated by it and ordered its Director to immediately put said policy into effect, and

"Whereas, thereafter said Authority did on January 23, 1953 adopt Resolution No. 1846 providing for the withholding of putting into effect its policy of non-segregation or integration until a special committee of the Board of Community Relations could make a study and survey of said policy and also make such recommendations to the Authority as from its study and survey it deemed advisable as to the time and manner of putting said policy into effect in the light of protests by East Toledo residents, and

"Whereas, thereafter on March 17, 1953, a suit was filed against the Authority in the District Court of the United States for the Northern District of Ohio, Western Division, being Case No.6989 on the Docket of said Court, seeking a mandatory injunction against the Authority requiring it to carry out said policy of non-segregation and which action is now pending before said Court, and

"Whereas, since the filing of said suit, and shortly before the trial, said Board of Community Relations, through its special committee, did complete its study and submit its report of the same approving said program of non-segregation, but failing to make recommendations as to how and when said policy should be put into effect because of the reasons stated in said report, and

"Whereas, since said trial, disapproval of the policy of non-segregation has been voiced by organized groups in East Toledo, both on Television and Radio and by certain members of the Council of the City of Toledo, and

"Whereas, after a careful study of the report of the Board of Community Relations, the complaints of the people opposed to the policy of non-segregation, and the continued vacancies in the projects, and after consulting with our Counsel, the Authority still feels that said policy of non-segregation is legally, morally and economically sound and that the Authority would be derelict in its duty if it failed to adopt and carry out said policy as soon as it is wise and proper to do so in the light of all the existing facts and circumstances,

"Now, Therefore, Be It Resolved That Resolution No. 1838 and Resolution No. 1846 be repealed.

"Be It Further Resolved, This 28th day of April, 1953, that the Toledo Metropolitan Housing Authority adopt a policy of non-segregation, commonly known as integration, in the operation and management of all of its low-rent housing projects.

"Said Director is hereby ordered to start putting into effect and carrying out said policy of non-segregation or integration, as soon after the adoption of this Resolution as he deems it proper and advisable to do so in the light of all the events and circumstances that have occurred since the adoption of Resolution No. 1838.

"Upon putting said policy into effect, said Director is hereby ordered to assign and house eligible families whenever and wherever vacancies occur on the basis of need, and without regard to race, religion, or national origin."

It appears that the plaintiffs, at the time of the commencement of this action, were eligible applicants for available space in the public housing facilities under control of defendant in which they desired accommodations for themselves and their families, and under the Resolution above set forth, and under the provisions of the Civil Rights Statutes above enumerated, the Fourteenth Amendment to the Constitution of the United States, and numerous controlling decisions of the Courts, they are entitled to and will be given equal consideration with all other eligible applicants.

At the time of the presentation of this case the Court observed "You must bear in mind here that we have projects erected

with public funds, erected by the Government of the United States, and the Government does not segregate its tax receipts." The Court had in mind then, as now, that we are here dealing with property rights as distinguished from the mere right to a public service. The trend of all of the later cases involving property rights is to conform strictly with the requirements of the Fourteenth Amendment and of the Civil Rights Statutes.

The case of Banks v. San Francisco Housing Authority, being case No. 420534 of the San Francisco Superior Court, decided October 1, 1952, is a case identical with the case before us. This case is unreported but a copy of the Court's opinion has been obtained from the Housing Authority in San Francisco. The case is also valuable because of the citations that it refers to and relies upon. The opinion reads in part as follows:

"The main question posed, then, at this stage by demurrer, is whether or not this public agency can exclude Negro persons solely because they are Negroes, from five of these projects and segregate them into the sixth. Is such segregation unlawful discrimination?

"The Fourteenth Amendment to the Constitution of the United States has uniformly been held to protect all persons, white or colored, against discriminatory legislation or action by the states or its agencies. It is the contention of the Housing Authority that they comply with this basic law in offering Negroes equal accommodations and facilities separately at Westside, even though they deprive them of the right to admission at the five other developments.

"However, it is clear to the Court that although at one time the 'separate but equal' doctrine was upheld as not being discriminatory treatment and followed in certain types of activities, nevertheless, since it was first enunciated in the Plessy v. Ferguson case (163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256)–(1895), it has in later years lost its force by reason of the holdings in many other cases showing that it has no application to ownership or occupancy of real property. *Discrimination by segregation of housing facilities and attempts to control the same by restrictive covenants have been outlawed by our Supreme Court.* (Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161.)

"(See also, Buchanan v. Warley (1917) 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149; Harmon v. Tyler (1926) 273 U.S. 668, 47 S.Ct. 471, 71 L.Ed. 831; City of Birmingham v. Monk, 5 Cir., 185 F.2d 859.)

"By extension of the logic and reason of these cases, it is apparent that that doctrine should not apply to a public housing project, financed by public funds and supervised and controlled by a public agency."

The case of Seawell v. MacWithey, 2 N.J.Super. 255, 63 A.2d 542, decided by the Superior Court of the State of New Jersey on January 10, 1949, is also directly in point. Paragraph 2 of the syllabus reads as follows:

"Municipality charged with management of public housing projects being erected with public funds furnished in part by state and in part by municipality could not exclude persons of colored race from three of projects and segregate them within a fourth in face of privileges and immunities clause, due process clause of Federal Constitution and provision in statute authorizing such public housing units and prohibiting discrimination because of race, creed or color, notwithstanding housing project made available to colored applicants was of like character and equal quality as other three projects. N.J.S.A. 55:14G–21; U.S. C.A. Const. Amend. 14, § 1."

In view of the foregoing the only question remaining before the Court is as to when the policy of integration should be made effective.

As action to implement the Resolution of the defendant is apparently being delayed because of the pendency of this ac-

tion, it would seem to the Court that a reasonable time limit should be fixed for the defendant to carry out its Resolution, as was done in Thompson v. Gibbes, D.C., 60 F. Supp. 872, but should that not be done for any reason the matter may again be brought to the attention of the Court for appropriate action. That time is fixed at on or before four months from the date of the entry of the order in this case.

A journal entry, drawn in accordance with this memorandum opinion, and reciting in greater detail the findings and order of the Court, is filed herewith.