**SELDEN APARTMENTS,**
**Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants-Appellees,**

No. 85–1048.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 20, 1986.

Decided March 7, 1986.

Chui Karega, argued, Detroit, Mich., for plaintiff-appellant.

Geneva Halliday, Janice Kittel Mann, Asst. U.S. Atty., argued, Detroit, Mich., for defendants-appellees.

Before CONTIE and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CONTIE, Circuit Judge.

Selden Apartment Associates (Selden) appeals the dismissal of its claims brought under section 16 of the Civil Rights Act of 1870 (42 U.S.C. § 1981) and section 1 of the Civil Rights Act of 1866 (42 U.S.C. § 1982). Selden also appeals the jury verdict in favor of the United States Department of Urban Development (HUD) in the remain-

der of Selden's unfair housing action brought pursuant to Title VIII of the Civil Rights Act of 1968, the Fair Housing Act (42 U.S.C. § 3601 *et seq.* ), and Article III, section 2 of the United States Constitution. Selden argues that the dismissal of its §§ 1981 and 1982 actions against HUD on the basis of sovereign immunity was incorrect. Selden further argues that the district court failed to instruct the jury on the burden of proof in a racial discrimination case in accordance with the principles of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v..Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Selden lastly challenges two evidentiary rulings of the district court, which excluded certain evidence at trial. For the reasons that follow, we affirm.

### I.

Selden is a limited partnership based in Detroit, Michigan. It was organized by black individuals for the purpose of submitting a bid to purchase the Selden Court Apartments, located in Detroit. In March of 1981, HUD offered the apartments for sale with housing assistance payments pursuant to section 8 of the United States Housing Act of 1937, as amended (42 U.S.C. § 1437f). HUD provided the following information, concerning the process of selecting a purchaser, to prospective purchasers of the apartments. In the selection process, purchase proposals were to be evaluated on the basis of twenty-two specific criteria. The four main areas evaluated by the criteria were: (1) experience and qualifications; (2) proposed ownership and management program; (3) program management and resources; and (4) city, tenant and community comments. The instructions stated that each of the twenty-two factors would be awarded a point value by HUD ranging from zero (unacceptable)

to five (excellent), with a maximum overall point total of 110. A rating of zero on any one of the criteria automatically would disqualify a proposal as unacceptable. The instructions further stated that proposals receiving 90 or more total points and no unacceptable ratings would be deemed "competitive" and HUD would select the "competitive" proposal with the highest bid as the successful proposal.[1]

Selden, Ye Olde Realty (YOR), and three other concerns submitted proposals to purchase the apartments. Selden offered a purchase price of $343,800 and YOR offered $341,000. The bid proposals were evaluated by a 4-person HUD committee, and Selden received a score of 83 while YOR received a score of 103. The other three bids each received a zero on at least one of the criteria and therefore were all disqualified. HUD awarded the sale of the Selden Court Apartments to YOR, a white-owned realty company based in Grayling, Michigan, as the highest bidder which also had a score of 90 or more.

After YOR was awarded the sale, Selden filed a bid protest which was denied. Selden then brought the present action alleging that HUD had unlawfully discriminated against it on the basis of race in the bid evaluation and selection process. Selden originally sought to enjoin the sale to YOR but the injunction was denied.[2]

The case was tried before a jury on December 7–11, 1984. At trial, members of the HUD committee testified as to the selection process. One committee member stated that Selden received a lower rating than YOR because the partnership did not have any direct experience in dealing with multi-unit HUD projects, as indicated by its proposal package. The same member testified that YOR's proposals for on-site management were superior to Selden's proposal. In the area of social management, another committee member testified that

---

1. The instructions also stated that if none of the "competitive" proposals had a rating of more than 100, the "competitive" range would be lowered in ten point increments until a qualifying successful proposal was determined. This in-

cremental lowering was unnecessary in the instant case.

2. That denial is not at issue in this appeal.

Selden received a lower rating than YOR because it had less experience in providing tenant services and in providing neighborhood involvement services. That member also testified that the committee did not know, at the time the bids were evaluated, the race of Selden nor did it consider whether YOR or Selden was comprised of white or black individuals. A third committee member testified that YOR received a higher rating in the area of financial strength of its purchasing plan because YOR had a greater net worth than Selden.

Selden sought to refute the committee's findings, particularly in the area of experience, in two ways. First, it emphasized that it had retained a managing firm experienced in managing Section 8 rentals to manage the Selden Court Apartments. This factor was known by the committee and was considered to be in Selden's favor. Second, Selden sought to illustrate YOR's poor performance in managing the apartments once it purchased them. The district court excluded all evidence pertaining to this topic, however.

In an attempt to show pretext, Selden sought to question a member of the HUD committee about whether multi-unit property had ever been sold in Detroit under HUD's Minority Business Enterprise Program.[3] The district court, however, sustained an objection to that question, determining that the focus of the case was on whether HUD discriminated in awarding the sale of the apartments to YOR, not whether HUD should have included the Selden Apartments in the Minority Business Enterprise Program.

3. Pursuant to that program, HUD would solicit bids from minorities to purchase property. The program had been utilized by HUD to sell three properties in the past.

4. HUD had, on May 2, 1983, moved for dismissal of the actions based on sovereign immunity. The district court, per Judge Churchill, denied the motion, holding that "[t]he 'sue or be sued' clause of the National Housing Act [12 U.S.C. § 1702] operates as a waiver of sovereign immunity that may otherwise bar the relief sought by the plaintiff. *Baker v. F & F Investment Co.,*

At the close of all evidence, but before instructing the jury, the district court judge dismissed Selden's §§ 1981 and 1982 actions for lack of jurisdiction on the ground that HUD had not waived its sovereign immunity with respect to actions under those statutes.[4] The jury was then instructed on Selden's claim of a violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* On December 11, 1984, the jury found in favor of HUD and this timely appeal followed.

## II.

### A. Sovereign Immunity

Selden claims that the district court erred in concluding, based on the doctrine of sovereign immunity, that it lacked jurisdiction over Selden's §§ 1981 and 1982 actions. Selden argues that HUD has waived its sovereign immunity with respect to these actions because they fall within the purview of the "sue and be sued" provision of section 1 of the National Housing Act of 1934, 12 U.S.C. § 1702. Section 1702 provides in pertinent part:

> The powers conferred by this chapter shall be exercised by the Secretary of Housing and Urban Development.... The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-A, IX-B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

A similar provision was enacted as part of the Housing Act of 1948, 42 U.S.C. § 1404a.[5] Section 1404a states that the United States Housing Authority, a prede-

489 F.2d 829 (7th Cir.1973)." Subsequently, the case was reassigned to Judge Suhrheinrich after his appointment to the bench. Judge Suhrheinrich *sua sponte* reconsidered the motion to dismiss and decided to dismiss the civil rights actions based upon the reasoning of *United States v. Yonkers Board of Education,* 594 F.Supp. 466 (S.D.N.Y.1984).

5. Section 1404a was not enacted as part of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.,* which comprises the chapter to which § 1404a applies.

cessor of HUD, "may sue and be sued only with respect to its functions under this chapter, and sections 1501 to 1505 of this title."

Selden further relies on *Baker v. F & F Investment Co.*, 489 F.2d 829 (7th Cir. 1973). In *Baker*, plaintiffs brought suit against HUD, as well as several other federal agencies, pursuant to 42 U.S.C. §§ 1981 and 1982, seeking actual and punitive damages. In response to HUD's defense of sovereign immunity, the Seventh Circuit held that HUD had consented to suit as indicated by the "sue and be sued" language of 12 U.S.C. § 1702, and that the civil rights actions were properly brought against HUD. The court declined to distinguish between the type of relief sought, stating that "restrictions on the authority of a federal agency to be sued are not to be lightly implied." *Id.* at 834, citing *FHA v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940). Based on the analysis and holding of *Baker*, Selden asserts that its §§ 1981 and 1982 claims were improperly dismissed.

■ We disagree. It is a well-accepted principle that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Also, "limitations and conditions upon which the Government consents to be sued must be strictly observed

and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). There is some disagreement concerning whether waivers of sovereign immunity are to be construed strictly or liberally,[6] but we find it unnecessary to resolve that question, as our analysis is sufficiently clear from other principles.

The issue presented here, whether the "sue and be sued" clauses of 12 U.S.C. § 1702 and 42 U.S.C. § 1404a operate as a waiver of HUD's sovereign immunity with respect to §§ 1981 and 1982 actions for damages, is one of first impression before this court.[7] Those provisions waive sovereign immunity for claims brought against HUD for violating substantive provisions of the Housing Acts. *See, e.g., Abrams v. Hills*, 547 F.2d 1062, 1070 (9th Cir.1976) (HUD's sovereign immunity waived with respect to action for failure to implement an "operating subsidy" program as required by the National Housing Act, 12 U.S.C. § 1715z–1). However, Selden's §§ 1981 and 1982 actions were not grounded on allegations that HUD breached legal duties under the National Housing Act of 1934 or the United States Housing Act of 1937 in awarding the sale of the apartments to YOR. Rather, the actions were based on allegations that HUD had engaged in racial discrimination.

Our analysis in determining whether HUD's sovereign immunity has been waived with respect to this type of action for damages[8] is guided by *FHA v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). The question in *Burr* was whether the Federal Housing Administration was subject to a garnishment action for monies

**6.** *Compare, e.g., Radin v. United States*, 699 F.2d 681, 685 (4th Cir.1983) (waivers of sovereign immunity strictly construed); *United States v. Adams*, 634 F.2d 1261, 1266 (10th Cir.1980) (same); and *Little Earth of 'United Tribes v. United States Department of Housing and Urban Development*, 584 F.Supp. 1292, 1299 (D.Minn. 1983) (same); *with, FHA v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940) (waivers of sovereign immunity to be liberally construed); and *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 35 (2d Cir.1979) (same).

**7.** This issue was observed to present a "substantial question" in *Jaimes v. Toledo Metropolitan Housing Authority*, 758 F.2d 1086, ·1105 n. 40 (6th Cir.1985). *Jaimes* was decided on other grounds, however, making it unnecessary to resolve the issue at that time.

**8.** We note the HUD has not asserted sovereign immunity as a bar to Selden's action brought under the Fair Housing Act.

due an employee. The Court held that the "sue and be sued" clause of what is presently codified as § 1702 waived HUD's sovereign immunity with respect to the garnishment action. The Court observed that "when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue and be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Id.* at 245, 60 S.Ct. at 490. Even though the Court determined that sovereign immunity had been waived, it limited the Administration's liability to "those funds which have been paid over to the Federal Housing Administration in accordance with [§ 1702] and which are in its possession, severed from Treasury funds in Treasury control...." *Id.* at 250, 60 S.Ct. at 403. Accordingly, the Court's decision turned on whether the action was commercial in nature, as part and parcel of the Administration's commercial transactions, and whether recovery would be from funds allocated to the Administration or from funds in the general Treasury.

Since *Burr*, actions brought under § 1702 have generally involved commercial suits by contractors relating to construction of housing projects financed under the Housing Act. That is, suits relating to HUD's commercial transactions. *See, e.g., Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644, 646–47 (5th Cir.1980) (sovereign immunity waived with respect to suit by building contractor's surety and assignee for payment for construction work on housing project which was insured by HUD pursuant to 12 U.S.C. § 1715 1(d)(4)); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 36 (2d Cir.1979) (waiver of sovereign immunity satisfied and HUD

held liable to general contractor for amounts due on project financed under 12 U.S.C. § 1715z–1); *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 179–80 (8th Cir.1978) (waiver of sovereign immunity satisfied by contractor's suit against HUD in connection with construction work on federally insured housing project). Even in commercial actions, the courts have recognized the limitation established in *Burr* that "[f]or a claim to be against [HUD] and therefore within the scope of the "sue and be sued" clause, as opposed to a suit against the United States, any judgment for plaintiff must be out of funds in control of [HUD] as distinguished from general treasury funds." *Silberblatt*, 608 F.2d at 36. That limitation has been utilized to bar contract damages actions which would require monetary recovery from funds beyond those within HUD's control and therefore not severed from general Treasury funds. *See, e.g., United States v. Adams*, 634 F.2d 1261, 1266 (10th Cir.1980). Since the judgment in such a suit "would expend itself on the public treasury," *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947), the suit is considered an impermissible action against the sovereign to which sovereign immunity applies. *See Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963).

Civil rights actions against HUD seeking declaratory relief or injunctions generally have been brought without analysis of § 1702 or sovereign immunity, *see, e.g., Garrett v. City of Hamtramck*, 503 F.2d 1236 (6th Cir.1974), since the review provisions of the Administrative Procedure Act are made applicable to agency action taken pursuant to civil rights laws by 42 U.S.C. § 2000d–2.[9] Accordingly, as long as the civil rights action is not seeking dam-

---

**9.** Section 2000d–2 provides:

Any department or agency action taken pursuant to section 2000d–1 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with

any requirement imposed pursuant to section 2000d–1 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that chapter.

ages, it is unnecessary to assert § 1702 as waiving HUD's sovereign immunity. "It is only where, as here, the claimants seek monetary damages, and thus *cannot* rely on the APA, that § 1702 is urged as a waiver of sovereign immunity for civil rights actions against HUD." *United States v. Yonkers Board of Education,* 594 F.Supp. 466, 473 (S.D.N.Y.1984).

The few courts which have addressed the issue of sovereign immunity with respect to §§ 1981 and 1982 damages actions against HUD have been inconsistent in their analysis and in their conclusions. *Compare, Unimex, Inc. v. HUD,* 594 F.2d 1060 (5th Cir.1979) (complaint alleging violations of 42 U.S.C. §§ 1981, 1982 and 1986 barred by sovereign immunity, § 1702 inapplicable as complaint did not assert any violations of the National Housing Act), *with, Baker v. F & F Investment Co.,* 489 F.2d 829 (7th Cir.1973). The only cases which have analyzed this question in light of the principles set forth in *Burr* are *Yonkers, supra,* 594 F.Supp. at 470–73, and *Little Earth of United Tribes v. HUD,* 584 F.Supp. 1292, 1298–1300 (D.Minn.1983). The district courts in each of those cases determined that the waiver provisions contained in 12 U.S.C. § 1702 and 42 U.S.C. § 1404a were inapplicable to civil rights actions against HUD and therefore held that such actions were barred by sovereign immunity. Each court relied on *Burr* in analyzing the issue. *Little Earth* observed:

> Any monies awarded for claimed civil rights violations would either have to be diverted from funds appropriated for another purpose or from the general treasury, not from a separate fund already within the possession and control of HUD.... To construe § 1702 as a waiver of immunity in civil rights suits for monetary damages is to violate the rule of *Burr* and to extend the provision far beyond its intended meaning.

584 F.Supp. at 1299. Similarly, *Yonkers* focused on the fact that "[c]ivil rights actions do not 'aris[e] out of the commercial

relationships which [HUD] enters into in pursuit of its statutory mission.'" 594 F.Supp. at 471, *quoting Silberblatt,* 608 F.2d at 36. The *Yonkers* court concluded that "to hold that § 1702 waives sovereign immunity for civil rights actions against HUD would require a significant departure from the understanding of § 1702 that was expressed in *Burr.*" 594 F.Supp. at 471.

We are convinced that the holdings and analyses of *Yonkers* and *Little Earth* are correct, based on the limitations *Burr* placed on the waiver of HUD's sovereign immunity. In the present case, Selden's §§ 1981 and 1982 actions sought general damages from HUD. A judgment for Selden would not have been recoverable from funds in the possession and control of HUD, but would have been satisfied from general Treasury funds. The actions therefore were not actions against HUD, but were actions against the United States. The "sue and be sued" provisions of the Housing Acts do not waive sovereign immunity with respect to such actions. Accordingly, the district court correctly dismissed Selden's §§ 1981 and 1982 civil rights damages actions as barred by sovereign immunity.

We recognize that the Seventh Circuit has held to the contrary, allowing a damages action against HUD brought under 42 U.S.C. §§ 1981 and 1982. *See Baker, supra.* However, we are unpersuaded by the *Baker* decision. The court in *Baker* failed to analyze the sovereign immunity question in light of the principles set forth in *Burr.* *Baker* did not determine whether the plaintiffs' claims would be satisfied from funds within HUD's control or from general Treasury funds. *Baker* also did not utilize the commercial obligation rationale of *Burr.* That is, *Baker* failed to explain the commercial nature of the actions or how the actions arose out of HUD's commercial transactions. In sum, *Baker* is the only decision which has held the waiver provisions of the Housing Acts waive sovereign immunity with respect to civil rights dam-

ages actions,[10] and we believe that decision is incorrect.

■ Even if we concluded that §§ 1702 or 1404a were applicable here, and Selden's §§ 1981 and 1982 actions were not barred by sovereign immunity, we would still affirm the judgment rendered in the district court. That is, assuming that the actions were improperly dismissed, reversal is not required here because Selden was not prejudiced by the dismissal. Fed.R.Civ.P. 61 provides that we must disregard any error or defect in any ruling or order of the district court "which does not affect the substantial rights of the parties." A "substantial right" of Selden was not affected by the dismissal of the §§ 1981 and 1982 claims.

The same evidence provided the basis for Selden's Fair Housing Act claim [11] and its §§ 1981 and 1982 claims. The courts have required the same standard of proof under these statutes. That is, "[t]he three-part burden of proof test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] ... (1973) ... has been widely applied to Title VIII [Fair Housing Act] and § 1982 claims." *Shaw v. Cassar*, 558 F.Supp. 303, 312 (E.D. Mich.1983), citing, *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1039 (2d Cir. 1979) (Title VIII); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551, (9th Cir.1980) (§ 1982); and *Harper v. Hutton*, 594 F.2d 1091 (6th Cir.1979) (both Title VIII and § 1982). The courts have uniformly held that a plaintiff establishes a *prima facie* case under either 42 U.S.C. §§ 1981, 1982 or 42 U.S.C. § 3601 *et seq.* by proving:

(1) That he or she is a member of a racial minority;

(2) That he or she applied for and was qualified to rent or purchase certain property or housing;

(3) That he or she was rejected; and

(4) That the housing or rental property remained available thereafter.

*See, e.g., Phiffer*, 648 F.2d at 551 (applying elements in § 1982 action); *12 Lofts Realty*, 610 F.2d at 1038 (applying elements in Title VIII, Fair Housing Action); *Sandford v. R.L. Coleman Realty Co., Inc.*, 573 F.2d 173, 175 (4th Cir.1978) (elements same under both the Civil Rights Acts, §§ 1981 and 1982, and Fair Housing Act of 1968, 42 U.S.C. § 3610(a)); *Shaw*, 558 F.Supp. at 312 (applying elements in actions under §§ 1981 and 1982 and 42 U.S.C. § 3601 *et seq.*); *Hobson v. George Humphreys, Inc.*, 563 F.Supp. 344, 351 (W.D.Tenn.1982) (applying same elements in actions pursuant to § 1982 and 42 U.S.C. § 3601 *et seq.*); and *Davis v. Mansards*, 597 F.Supp. 334, 345 (N.D.Ind.1984) (applying same elements in actions pursuant to § 1982 and 42 U.S.C. § 3601 *et seq.*).

As evidenced by the jury verdict for HUD, Selden failed to establish a violation of Title VIII, the Fair Housing Act. Because the same elements must be established in a fair housing action brought under Title VIII as an action brought under §§ 1981 or 1982,[12] and because Selden's

---

**10.** Other cases have been asserted as so holding but are distinguishable. For example, in *Lopez v. Arraras*, 606 F.2d 347 (1st Cir.1979), § 1404a was held to constitute a waiver of sovereign immunity with respect to an action brought under 42 U.S.C. §§ 1981 and 1985(3) and as a result the court allowed HUD to be joined as a party to the action. The action in *Lopez* alleged, however, that a specific provision of the United States Housing Act, 42 U.S.C. § 1437a(1), was violated.

Accordingly, any liability on HUD's part arose from its commercial transactions undertaken as part of the Housing Act and not from the civil rights laws. *See Yonkers*, 594 F.Supp. at 472 n. 9. Further, the plaintiffs in *Lopez* did not, unlike the plaintiff here, seek purely monetary damages. *See Little Earth*, 584 F.Supp. at 1300.

**11.** The Fair Housing Act "makes it unlawful ... for any person to refuse to sell or otherwise make unavailable a dwelling to any person because of race." *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1036 (2d Cir.1979). The purpose of Title VIII, as stated in 42 U.S.C. § 3601, is "to provide, within constitutional limitations, for fair housing throughout the United States."

**12.** This is not to say that civil rights actions and fair housing actions do not "stand independently of each other." *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101, 110 (3d Cir.1981). The actions are distinguished in the following manner:

While both statutes prohibit racial discrimination in real estate transactions, the language

§§ 1981 and 1982 claims were based on the same proof as its Title VIII claim, the jury finding for HUD in the Title VIII claim necessarily precluded a finding for Selden in its §§ 1981 and 1982 actions. Selden therefore was not prejudiced by the dismissal of its civil rights actions and any error in the dismissal must be disregarded. Accordingly, even if we accepted Selden's argument that HUD's sovereign immunity had been waived with respect to its §§ 1981 and 1982 damages actions, we would still affirm the jury verdict in favor of HUD.

### B. Jury Instructions on Burden of Proof

Selden argues that the district court did not adequately instruct the jury on the elements of a *prima facie* case of racial discrimination. Selden also claims that the court's instructions concerning the burden and allocation of proof were inadequate. Selden concludes that because the court reduced the *Burdine* standard, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to a single paragraph, the jurors were left with an incomplete explanation on how they were to evaluate the evidence.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established the basic allocation of burdens and order of presentation of proof in a discrimination case. First, the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. at 1824. Second, if the plaintiff sufficiently establishes a *prima facie* case, the burden

shifts to the defendant to "articulate some legitimate, undiscriminatory reason" for its action. *Id.* Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext. *Id.* at 804, 93 S.Ct. at 1825.

The Supreme Court in *Burdine, supra,* 450 U.S. 248, 101 S.Ct. 1089, explained that by establishing a *prima facie* case, the plaintiff in a discrimination action creates a rebuttable presumption of unlawful discrimination. *Id.* at 254, 101 S.Ct. at 1094. The burden which shifts to the defendant enables the defendant "to rebut the presumption of discrimination." *Id.* When the defendant successfully rebuts the presumption, "the factual inquiry proceeds to a new level of specificity." *Id.* at 255, 101 S.Ct. at 1095.

In *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1982), the Court discussed the *McDonnell-Burdine* presumption. The Court stated:

[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VIII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity."

---

of each statute suggests that some forms of discrimination are not prohibited by each of these provisions, the Fair Housing Act does not prohibit racial discrimination in transactions having no nexus to realty, and section 1982 does not prohibit discrimination based on sex, religion or national origin.

*Id.* These distinctions are inapplicable to the present case, however, since both Selden's civil rights actions and its fair housing action were based on the same transaction and the same proof.

Also, the distinction between actions under the different Acts does not relate to the proof required under each action. When claims are made jointly under Title VIII and §§ 1981 and

1982, the claims are distinguished to allow punitive damages in excess of $1,000. Punitive damages under the Fair Housing Act are limited to $1,000, 42 U.S.C. § 3612(c), but are not limited under the Civil Rights Acts. *Miller*, 646 F.2d at 111; *See also, McDonald v. Verble*, 622 F.2d 1227, 1234 (6th Cir.1980); *Davis v. Mansards*, 597 F.Supp. 334, 346–47 (N.D.Ind.1984). Since Selden was not awarded any punitive damages under its Title VIII fair housing claim, it could not have been awarded punitive damages in excess of $1,000 under its civil rights claims. Therefore, the reason for distinguishing between the two types of actions is inapplicable here.

*Id.* at 715, 103 S.Ct. at 1481 (footnote and citations omitted). The Court continued its analysis as follows:

> The "factual inquiry" in a Title VII case is "[whether] the defendant intentionally discriminated against the plaintiff." In other words, is "the employer ... treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" The prima facie case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.* The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Id.* (citations omitted and emphasis added).

■ Applying the *Aikens* analysis to this discrimination in housing action, we find that the district court properly instructed on the "ultimate factual issue." At the close of Selden's evidence, HUD moved for a directed verdict on the ground that a *prima facie* case had not been established. The district court denied the motion, thereby finding that Selden had established its *prima facie* case. HUD then introduced proofs to show a nondiscriminatory, legitimate reason for its action. After those proofs were presented, Selden moved for a directed verdict. The district court denied the motion, finding that HUD's business reasons were adequate and nonprejudicial and concluding that Selden had the "burden to come forward." At this point, as dictated by *Aikens,* the *McDonnell-Burdine* presumption "dropped from the case" and the only question of fact for the jury was whether HUD intentionally discriminated against Selden.

The district court properly instructed the jury as to that ultimate question. The court gave the following instructions:

> Plaintiff has the burden to establish by a preponderance of the evidence that Defendant did not accept Plaintiff's proposal based on a legitimate non-discriminatory business reason but intentionally discriminated in whole or in part against Plaintiff because of the racial make-up of its partners.
>
> Plaintiff is not required, however, to prove that it is more qualified than the firm which was selected to receive the property. Discrimination exists if you find Defendant treated Plaintiff less favorably than other businesses because of the racial make-up of Plaintiff's partners. Plaintiff does not have to prove that race was the sole motivating factor but it must prove by a preponderance of the evidence that race was one of the motivating factors.
>
> Intentional discrimination may be inferred from the totality of the circumstances. In the event you are convinced by the evidence that the defendant did discriminate against Plaintiff then you must determine the amount of damages, if any, Plaintiff has sustained.

These instructions sufficiently presented to the factfinder, the jury, the ultimate issue of intentional discrimination. During the trial, the district court clearly followed the procedure of proof required by *McDonnell-Burdine,* it simply did not instruct the jury on the entire process. This is the proper approach under *Aikens.* Therefore, we reject Selden's claim that the court erred in its instructions on burden of proof.

### C. Exclusion of Evidence

Selden sought to introduce evidence of YOR's performance in managing the apartments *after* it purchased them from HUD. Selden also sought to elicit testimony concerning other HUD sales, particularly those occurring under HUD's Minority Business Enterprise Program, in an apparent attempt to show that HUD had a past pattern of racial discrimination in selling multi-unit rental properties. The district

court excluded the post-performance evidence and sustained objections to Selden's inquiries into HUD's other sales.

It is well established that district court judges have broad discretion on evidentiary rulings. "Rulings on the relevancy and materiality of evidence may not be disturbed on appeal in the absence of a showing of clear abuse of discretion." *Geisler v. Folsom*, 735 F.2d 991, 997 (6th Cir.1984). Selden has failed to produce evidence showing an abuse of discretion in this case.

First, evidence of YOR's subsequent performance is simply not relevant to the issue of whether HUD engaged in intentional discrimination in awarding the sale to YOR. The manner in which YOR would perform after the sale was obviously unknown to the HUD committee when it made its decision. Evidence of YOR's performance therefore is not probative of the factors considered by HUD in evaluating the bids and in making its decision. Thus, the evidence fails to satisfy the relevancy requirement of Fed.R.Evid. 401 and we conclude that the district court did not abuse its discretion in excluding the evidence.

Second, Selden has also failed to establish the relevancy of the evidence of property sold pursuant to HUD's Minority Business Enterprise Program. The Selden Court Apartments were not sold pursuant to that program and HUD was under no duty to sell the apartments under that program. The apartments were sold pursuant to a separate bidding program with established guidelines and criteria. The issue in this case was whether HUD discriminated against Selden in evaluating Selden's proposal and in awarding the sale to YOR. From the proof presented by Selden, this court cannot find that the evidence of sales under the Minority Business Enterprise Program is relevant to this issue and therefore we cannot conclude that the district court abused its discretion in excluding that evidence.[13]

Having found all of Selden's claims to be unpersuasive, we accordingly AFFIRM the judgment of the district court.

---

13. HUD argued before this court that the issue concerning evidence of other HUD sales was not preserved for appeal because Selden failed to establish the substance of the evidence it sought to introduce, citing to Fed.R.Evid. 103(a). Rule 103(a) provides in pertinent part:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . . .

(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Even though, based on our conclusions set forth above, we need not decide this issue, we note that Selden has never shown, either at trial or on appeal, the substance of the particular statistical evidence which Selden claims indicates a pattern or practice of HUD discrimination in selling multi-unit rental properties. Selden merely asserts that statistics *might* have shown a prior pattern of discrimination. Therfore, it appears that Selden has failed to meet its burden under Rule 103(a)(2).