833 F.2d 1203
 Josie JAIMES; Tomas Gonzales; Clarence Turner; and
Patricia Davis, Plaintiffs-Appellees,
v.
LUCAS METROPOLITAN HOUSING AUTHORITY (LMHA); John Landry;
John Chadwell; Carlton Siegel; Maureen Layson; Frank B.
Daig; and Dorothy Dennis (86-3518), United States
Department of H.U.D.; Samuel R. Pierce, Jr., Secretary;
Gertrude W. Jordan, Region V. Administrator; Judith Y.
Brachman, Director (Columbus) (86-3561), Defendants-Appellants.
 Nos. 86-3518, 86-3561.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 17, 1987.
Decided Nov. 20, 1987.
Opinion on Denial of Rehearing Feb. 3, 1988.
 
 William M. Connelly, Kevin E. Joyce (argued), Connelly, Soutar & Jackson, Toledo, Ohio, for defendants-appellants in No. 86-3518.
 Anthony J. Ciccone, Jr., HUD Office of Litigation, Marc Johnston, Civil Div., Appellate Staff, U.S. Dept. of Justice, Washington, D.C., for HUD.
 Patrick J. Foley, Arthur R. Goldberg, Asst. U.S. Attys., Toledo, Ohio, Anthony J. Steinmeyer (argued), Shalom Brilliant, U.S. Dept. of Justice, Civil Div., John Hoyle, Anthony J. Ciccone, Jr., Litigation Office, U.S. Dept. of H.U.D., Washington, D.C., for defendants-appellants in No. 86-3561.
 Jeanne Deimling Johns (argued), Glenn G. Galbreath, A.B.L.E., Toledo, Ohio, Martin E. Sloane, Nat. Committee Against Discrimination in Housing, Washington, D.C., for plaintiffs-appellees.
 Before MARTIN, JONES and WELLFORD, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The Lucas Metropolitan Housing Authority and the United States Department of Housing and Urban Development challenge a judgment requiring compliance with an affirmative action plan imposed by the court in an effort to desegregate public housing in Toledo, Ohio. We conclude that certain of the plan's provisions may not legitimately be enforced while others remain appropriate as narrowly-tailored remedies for past discrimination. The order of the district court is, therefore, affirmed in part and reversed in part, and we order the defendants to undertake actions to comply with the provisions upheld. We also direct that the court hold a hearing on the issue of the United States Department of Housing and Urban Development's liability.
 
 
 2
 This class action was initially brought in February 1974 by four named plaintiffs living in and around Toledo, Ohio. They sought relief under the fifth, thirteenth, and fourteenth amendments of the United States Constitution; the Civil Rights Act of 1870, 42 U.S.C. Secs. 1981, 1982, and 1983; Title VI of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000d--2000d-4; Title VIII of the Civil Rights Act of 1968, 42 U.S.C. Secs. 3601-3631; and the United States Housing Act of 1937, as amended, 42 U.S.C. Secs. 1437-1437j. The plaintiffs alleged that the Lucas Metropolitan Housing Authority, formerly the Toledo Metropolitan Housing Authority, engaged in past de jure segregation, and that it failed to correct the earlier illegal conduct by continuing to countenance segregation in its public housing. The plaintiffs initially complained that the Lucas Metropolitan Housing Authority intentionally placed public housing in predominantly minority areas.
 
 
 3
 The class was conditionally certified in April 1975, and the United States Department of Housing and Urban Development was joined as a defendant. The case was tried in January 1978, and in May 1983 the district court issued its opinion. The district court found that both the Lucas Metropolitan Housing Authority and the United States Department of Housing and Urban Development were responsible for intentional discrimination and segregation. The court ordered injunctive and other equitable relief, and it also ordered compensatory and punitive damages to three of the four named plaintiffs.
 
 
 4
 The defendants then appealed to this court, which issued its opinion in March 1985, reversing in part and affirming in part. That opinion appears at 758 F.2d 1086. We found no clear error in the district court's findings or conclusions regarding the impermissible internal segregation within the Lucas Metropolitan Housing Authority housing projects, and we affirmed the order requiring prompt submission of a plan to remedy that situation. We found, however, that, as to the plaintiffs' hopes for low-income housing in suburbs outside Toledo, they lacked standing. The damage awards against the agency were set aside, as were the portions of the order for injunctive relief dealing with the construction of projects outside the City of Toledo.
 
 
 5
 Upon remand, a redrafted affirmative action plan was issued in December 1986, and it is before us now.
 
 
 6
 The plan of the district court was modeled generally along the lines of Schmidt v. Boston Housing Authority, 505 F.Supp. 988 (D.Mass.1981), which provided in part:
 
 
 7
 B. The general objectives of the Plan are to remedy the effects of past discrimination and to assure equal housing opportunity without regard to race, color, or national origin.
 
 
 8
 It provided that the ratio between minority and non-minority occupants in family housing locations would be approximately three to one, and in elderly locations one to one, and the plan allowed for a deviation of two-and-one-half percent from these ratios. The court also provided that the plan would continue until all its objectives were achieved, but that the plan could be modified upon motion of any party at any time when it appeared progress was not being made toward its objectives.
 
 
 9
 The plan also provided, at part II, paragraph E, that each applicant would be offered the first available, appropriately-sized unit in every Lucas Metropolitan Housing Authority location in which his race did not predominate; if more than one unit existed, the applicant would be offered a choice. If a unit was not available in such a location, the applicant could be offered a unit in another location in which his race predominated; he could then refuse that unit without losing his place in line. Part II, paragraph F, provided that, if the applicant refused all units offered in which his race did not predominate, absent good cause, the applicant would lose his place and move back to the end of the waiting list. "Good cause" would occur when either: (1) physical needs of the occupant required, or (2) the location would cause undue hardship with respect to health or employment.
 
 
 10
 Part III provided for transfers and established priorities for available units. The priorities were as follows:
 
 
 11
 1. hardship transferees (those with a compelling medical or employment need);
 
 
 12
 2. integrative transferees;
 
 
 13
 3. new applicants whose assignment will decrease the segregation of the location; and
 
 
 14
 4. new applicants whose assignment will not change or increase the segregation of the location.
 
 
 15
 Paragraph E provided that the Lucas Metropolitan Housing Authority and the United States Department of Housing and Urban Development would pay either the actual moving expenses at a rate not to exceed $200 per bedroom or would provide free moving services for integrative transferees. In addition, the transferee would not be charged any rent for the first month after transfer. Part IV, paragraph B, of the plan also incorporated provisions for intensive counselling for tenants in the projects who were undergoing integration. Part IV, paragraph C, required the United States Department of Housing and Urban Development to increase the Lucas Metropolitan Housing Authority's annual operating funds to enable the Lucas Metropolitan Housing Authority to hire an additional four maintenance personnel who would recondition vacant units to make them available more quickly. Paragraph D required the United States Department of Housing and Urban Development to increase the Lucas Metropolitan Housing Authority's operating funds to enable the Lucas Metropolitan Housing Authority to hire an additional four employees for purposes of coordinating and implementing the new application, transfer, and notice procedures. Paragraph E provided that the funds for paragraphs C and D would be in addition to the Lucas Metropolitan Housing Authority's normal allocation from the United States Department of Housing and Urban Development rather than being drawn from the Lucas Metropolitan Housing Authority's existing budget. The remainder of the plan involved notice and monitoring provisions.
 
 
 16
 The defendants have only volunteered to change one particular aspect of the current system of housing assignment--the "three-refusal" rule. At present, an applicant is entitled to refuse three offered units without having to show "good cause" before his name is placed at the bottom of the waiting list.
 
 
 17
 We previously found that the three-refusal rule served to maintain segregation in the housing projects, and we ordered that it be abandoned. Our earlier opinion, however, ordered that the affirmative action plan not be limited to the abandonment of the three-refusal rule, but that it include: (1) a transfer policy which encourages a better racial balance; (2) the affirmative marketing of units to help achieve this balance; and (3) the earlier housing of applicants willing to reside in a project where they would improve the racial balance. The Lucas Metropolitan Housing Authority and the United States Department of Housing and Urban Development now raise a number of arguments in an effort to establish that the district court's proposed plan constituted an abuse of discretion.
 
 
 18
 First, we acknowledge that the district court's plan would apply "race-conscious" criteria to those seeking placement in the Lucas Metropolitan Housing Authority's housing. Because the plan is "race-conscious" as opposed to "colorblind", it must be evaluated under the two-prong "strict scrutiny" test. And, as the Supreme Court has recognized, "the level of scrutiny does not change merely because the challenged classification operates against a group that historically has not been subject to governmental discrimination." Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 106 S.Ct. 1842, 1846, 90 L.Ed.2d 260 (1986) (citing Mississippi University for Women v. Hogan, 458 U.S. 718, 724 n. 9, 102 S.Ct. 3331, 3336 n. 9, 73 L.Ed.2d 1090 (1982); Regents of University of California v. Bakke, 438 U.S. 265, 291-99, 98 S.Ct. 2733, 2748-53, 57 L.Ed.2d 750 (1978) (opinion of POWELL, J., joined by WHITE, J.)). The race-consciousness of the plan involved here, however, does not involve so-called reverse discrimination. Rather, this plan is facially neutral; it neither prefers blacks over whites nor whites over blacks. Instead, the district court's plan prefers those tenants and would-be tenants of the Lucas Metropolitan Housing Authority who are willing to aid in the integration of the public housing facilities. Both minorities and non-minorities are eligible for preferential treatment under the plan, and those with hardship needs are preferred over integrative transferees and applicants.
 
 
 19
 This does not mean that we need not apply strict scrutiny. That test requires, first, that any racial classification "be justified by a compelling governmental interest." Second, the means chosen must be "narrowly tailored to the achievement of that goal." Wygant, 106 S.Ct. 1842, 1846 (citing Palmore v. Sidoti, 466 U.S. 429, 432, 104 S.Ct. 1879, 1881, 80 L.Ed.2d 421 (1984); Fullilove v. Klutznick, 448 U.S. 448, 480, 100 S.Ct. 2758, 2776, 65 L.Ed.2d 902 (1980)).
 
 
 20
 Here, we must assume the Lucas Metropolitan Housing Authority was guilty of past discrimination and of acts perpetuating segregation within the housing units. Remedying the manifestations of past discrimination has long been recognized as a compelling governmental interest. In such cases it may be necessary to take race into account in fashioning a remedy. Wygant, 106 S.Ct. 1842, 1850. Because Wygant involved layoffs of tenured teachers, the Court there distinguished earlier cases involving minimal burdens on innocent parties. Id. at 1850-51. We believe the remedy ordered in this case, with certain changes, imposes a minimal burden on the parties involved and is, therefore, narrowly tailored to achieve its purposes. We do not believe that the plan will burden either minorities or non-minorities. To the extent that the plan's three-to-one ratio may serve to prefer either whites or blacks in obtaining public housing, we hold that it is void. Nonetheless, we find that the concept of identifying a ratio representing the racial mix of both those currently residing in the Lucas Metropolitan Housing Authority's housing and those on the waiting list is both permissible and desirable as a goal for integration. But it should not be interpreted as a strict racial quota. As the district court stated, as long as the racial mix within individual housing projects is moving toward the desired balance, the Lucas Metropolitan Housing Authority and the United States Department of Housing and Urban Development will be in compliance with the plan.
 
 
 21
 Here we would like to draw from an order by Judge Odell Horton, Jr. of the Western District of Tennessee approving a settlement in a similar case. In that order, which was filed with the record below, Judge Horton ordered an annual review of the racial composition of all the housing projects, as well as a review of the family composition within the projects, in order to determine which families were in units of inappropriate size and which projects were ripe for further integrative transfers. We believe the same kind of review should occur here.
 
 
 22
 In addition, Judge Horton ordered that the Memphis plan should be in effect for six years. Here, Judge Young has ordered that the plan be in effect for perpetuity. We believe that, in so doing, Judge Young intends that discrimination may never again be allowed to exist. The plan itself, however, should not need to exist in perpetuity. We suggest to the district court that the plan should end upon the court's finding that its goal has been accomplished or upon a motion of either party followed by a hearing on the issue.
 
 
 23
 Thus, as required by Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), and Milliken v. Bradley, 418 U.S. 717, 744, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974), the scope of the remedy here is consistent with the nature and extent of the constitutional violation. For, "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, ... breadth and flexibility are inherent in equitable remedies." Hills v. Gautreaux, 425 U.S. 284, 297, 96 S.Ct. 1538, 1546, 47 L.Ed.2d 792 (1976) (quoting Swann, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276). We are faced here with a past history of de jure segregation, which, despite the district court's order in Vann v. Toledo, 113 F.Supp. 210 (N.D.Ohio 1953), the defendants have failed to take affirmative steps to remedy. These circumstances indicate that the imposition of racial goals is proper and necessary. The problems have been compounded by the inaction of the Lucas Metropolitan Housing Authority following the decisions of both the district court and the Sixth Circuit Court. Such inaction, combined with the lack of teeth in the Lucas Metropolitan Housing Authority's proposed remedial plan, mandates the prompt imposition of this new plan.
 
 
 24
 The more difficult issues in this case involves the liability of the United States Department of Housing and Urban Development and the scope of the remedy that may be ordered against it. It is argued that the well-established "law-of-the-case" doctrine prevents our review of the issue of the United States Department of Housing and Urban Development's liability.
 
 
 25
 This argument would prevail if we and the district court had in fact made a specific determination during the earlier appeal. A reading of our opinion reveals, however, that we were uncertain about "holding HUD and its officials liable absent a direct relationship being established with respect to demonstrated racially discriminatory conduct and motivation on its part, rather than its perceived inaction and/or refusal to disturb the status quo." Jaimes, 758 F.2d 1086, 1104. We then remanded the case, asking the district court to address the liability issue. On remand, the district court failed to do so. Instead, it merely upheld those parts of the plan not expressly struck down by our opinion.
 
 
 26
 Although we do not feel it is our role to resolve this issue, we feel the district court should be guided by the Eleventh Circuit's opinion in Anderson v. City of Alpharetta, 737 F.2d 1530, 1537 (11th Cir.1984). In Anderson, the court interpreted section 3608(d)(5) of Title 42 and decisions which subjected the United States Department of Housing and Urban Development to liability in two types of situations: first, when the United States Department of Housing and Urban Development has taken discriminatory action itself; and second, when the United States Department of Housing and Urban Development is aware of a grantee's discriminatory practices but has made no effort to force it to comply with the Fair Housing Act by cutting off existing federal financial assistance.
 
 
 27
 In our opinion in Jaimes, 758 F.2d 1086, 1104, we expressed uncertainty as to whether the United States Department of Housing and Urban Development's relationship with the Lucas Metropolitan Housing Authority was close enough to constitute awareness of discriminatory practices. Additionally, we found that the Lucas Metropolitan Housing Authority had no duty to seek cooperation agreements with municipalities in order to construct low-income housing outside Toledo. Therefore, we cannot now hold the United States Department of Housing and Urban Development liable for any role it may have played in the failure to seek such cooperation.
 
 
 28
 Thus, the United States Department of Housing and Urban Development may only be found liable if the information with which the Lucas Metropolitan Housing Authority provided it, information regarding the Lucas Metropolitan Housing Authority's practices and the racial mix of projects, put the United States Department of Housing and Urban Development on notice of discriminatory conduct on the part of the Lucas Metropolitan Housing Authority. This issue, of course, is a factual question which must be resolved by the district court.
 
 
 29
 If, in fact, the United States Department of Housing and Urban Development is found liable, the question remains for what is it liable in light of sovereign immunity? In Selden Apartments v. U.S. Dep't of Hous. and Urban Dev., 785 F.2d 152 (6th Cir.1986), we attempted to determine to what extent the "sue and be sued" provision of 42 U.S.C. Sec. 1404a waives the sovereign immunity of the United States Department of Housing and Urban Development. The statute states it "may sue and be sued only with respect to its functions under this chapter, and sections 1501 to 1505 of this title." Thus, to the extent that the United States Department of Housing and Urban Development is being sued under the Housing Act of 1948 of the National Housing Act of 1934, it has waived sovereign immunity. In addition, civil rights actions against the United States Department of Housing and Urban Development seeking declaratory or injunctive relief have been allowed, without considering the question of sovereign immunity, because those plaintiffs rely on the Administrative Procedure Act as applied under 42 U.S.C. Sec. 2000d-2. Selden Apartments, 785 F.2d 152, 157. Thus, only where the civil rights actions seek monetary damages does the problem actually arise.
 
 
 30
 The final issue is whether the other provisions of the affirmative action plan are permissible. Those provisions include the order that the United States Department of Housing and Urban Development provide funding for the Lucas Metropolitan Housing Authority to hire eight additional staff people and that the Lucas Metropolitan Housing Authority provide moving services or pay $200 per bedroom for integrative transferees. These provisions are not in the nature of damages, and they could be paid out of funds in control of the United States Department of Housing and Urban Development as distinguished from general treasury funds. See id. at 157. Nonetheless, we are not convinced that we should order disbursement of these funds to the Lucas Metropolitan Housing Authority without a further finding by the district court. Therefore, we hold that Part IV, paragraphs C, D, and part of E are not enforceable. In Part IV, paragraph E, however, the provision that Lucas Metropolitan Housing Authority provide a month's free rent to integrative transferees remains effective as being totally within the control of the Lucas Metropolitan Housing Authority.
 
 
 31
 Therefore, we affirm in part, reverse in part, and remand this case to the district court for a specific finding on the extent of the United States Department of Housing and Urban Development's liability.
 
 
 32
 WELLFORD, Circuit Judge, dissenting in part and concurring in part:
 
 
 33
 In Selden Apartments v. U.S. Dept. of Housing & Urban Development, 785 F.2d 152, 158 (6th Cir.1986), we made it clear that a civil rights action seeking damages does not lie against HUD, "based on the limitations Burr[1] placed on the waiver of HUD's sovereign immunity." The record in this case establishes that any "award" or judgment imposing affirmative relief in requiring an expenditure of funds against HUD is in effect an imposition of damages against that agency of the United States and is barred by the rationale of Selden.
 
 
 34
 In addition, our prior opinion in this case expressed our view that there was no persuasive finding of a direct relationship between the racially discriminatory conduct of LMHA and its officials, and the actions of HUD or its officials. In our previous treatment of this case, we directed the district court to make a finding concerning HUD's waiver of sovereign immunity because we felt there was an insufficient link between the action of LMHA and its officials, and HUD.[2] Jaimes v. Toledo Metropolitan Housing Auth., 758 F.2d 1086 (6th Cir.1985). This was not done, and I do not believe plaintiffs are entitled to yet another remand to establish such a liability claim.
 
 
 35
 This is not to say that HUD cannot be liable under certain limited circumstances. Plaintiff is entitled to make HUD a defendant for the purposes of receiving declaratory or injunctive relief, such as assisting LMHA to change its policies towards desegregating housing units. HUD and its officials do not, however, have "an affirmative legal duty to correct injustice wherever it exists," but rather to "supply 'technical' assistance to ... organizations that are concerned with the problem of fair housing," or to " 'withhold funds or defer action in the name of desegregation.' " Jaimes, 758 F.2d at 1104 (quoting Anderson v. City of Alpharetta, 737 F.2d 1530 (11th Cir.1984)) (emphasis added).
 
 
 36
 I would also limit the affirmative action order in this case to the type and extent of relief such as specified by Chief Judge Horton in Hale v. Department of Housing and Urban Development, No. C-73-410 (W.D.Tenn. August 23, 1985). Particularly, I would limit its reach and effectiveness to six years as in that case because an "open ended" or indefinite term order of the type ordered by the district court here is inappropriate.
 
 
 37
 Therefore, I concur that prompt implementation of a limited and "narrowly tailored" affirmative action plan to assist in bringing about desegregation is permissible with primary liability directed against LMHA and its officials. I concur in the holding that HUD may not be liable for LMHA's failure to construct low-income housing in municipalities outside Toledo. I dissent from the decision to remand for consideration of the liability of HUD to provide funding for additional LMHA staff people or for transfer expenses.
 
 ON REHEARING
 WELLFORD, Circuit Judge, dissenting:
 
 38
 I would grant HUD's motion for clarification or modification or rehearing this case, which has now been heard twice by two different panels of this court. I believe that this court should clearly specify what provisions of the order of the district court are "void," and/or which provisions set out unlawful or improper racial preferences in tenant assignments. It should set out what "changes" in the plan imposed by order of the district court would produce only a "minimal burden on the parties." Maj. op at 1207.
 
 
 39
 I reiterate my position, as the author of the prior opinion and the dissent in this case, that the doctrine of sovereign immunity protects HUD from an award of damages or providing funding to Lucas Metropolitan Housing Authority. See Selden Apartments v. United States Dep't of Housing and Urban Development, 785 F.2d 152 (6th Cir. 1986); Massachusetts v. Departmental Grant Appeals Board, 815 F.2d 778, 783 (1st Cir.1987); Geyen v. Marsh, 775 F.2d 1303, 1307 (5th Cir.1985); New Mexico v. Regan, 745 F.2d 1318, 1321-23 (10th Cir.1984). At the very least, the issue of sovereign immunity of HUD should be remanded for further consideration, and a particular holding on this question by the district court.
 
 
 
 [1]
 F.H.A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Also cited in support of that ruling were United States v. Yonkers Board 594 F.Supp. 466 (S.D.N.Y.1984), and Little Earth v. HUD, 584 F.Supp. 1292 (D.Minn.1983)
 
 
 [2]
 "A waiver of sovereign immunity 'cannot be implied but must be unequivocably expressed.' " Selden at 156, quoting United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)