Randhir **CHAUHAN**, Plaintiff,

v.

**M. ALFIERI CO., INC.,** Defendant.

Civ. A. No. 87–1569.

United States District Court,
D. New Jersey.

Jan. 31, 1988.

Douglas J. Kinz, Totowa, N.J., for plaintiff.

John F. Casey, Kimmelman, Wolff & Samson, Roseland, N.J., for defendant.

## OPINION

WOLIN, District Judge.

In this civil rights action, defendant M. Alfieri Co., Inc. ("Alfieri") renews its motion for summary judgment against the claim of plaintiff Randhir Chauhan. For the reasons set forth below, defendant's motion for summary judgment is granted; however, the Court will vacate its previous order of August 5, 1988, and now orders that the sum of $2,500 which plaintiff deposited with the Clerk of the Court be returned to the plaintiff.

## I.  BACKGROUND

Plaintiff instituted this civil rights action against Alfieri in April of 1987, alleging intentional discrimination in the rental of retail space under 42 U.S.C. § 1981 and N.J.S.A. 10:5–1 *et seq.* The episode in question began in November of 1985, when plaintiff, an Indian national, walked into Alfieri's office in Metro Park III ("Metro Park"), a 15 story commercial office building in Edison, New Jersey, developed and owned by Alfieri. Plaintiff inquired into the rental of retail space in the lobby of Metro Park for purposes of operating a sundry shop business similar in nature to a number of other sundry shops which plaintiff has purchased, sold and operated since his arrival in the United States 12 years ago. At Metro Park plaintiff spoke to Harvey Schultz, the Executive Vice President of Alfieri. Although it was not part of his normal duties to field such inquiries, Schultz spoke to plaintiff because Alfieri had not yet hired anyone to meet and negotiate with potential tenants.

In their brief conversation, Schultz apparently informed plaintiff that retail rent-

al space was available and requested that plaintiff provide Alfieri with a copy of his Federal Income Tax 1040 return, which plaintiff subsequently supplied to Alfieri.

A few weeks later, on December 6, 1985, Schultz sent plaintiff a letter indicating that: "At the present time, we are not able to make a commitment for your type of business. We would appreciate it if you would call us in about six months to ascertain the status of our leasing capabilities. We are returning the copy of your Form 1040 for the time being." Plaintiff's Opposition Brief, Exhibit A.

Schultz later testified that at the time of plaintiff's inquiry, Metro Park was only occupied by one corporate tenant who occupied less than six out of 15 available floors, and that the building could not support plaintiff's business. Schultz also stated that Alfieri was primarily concerned with renting all the unoccupied space in the building as office space, and thus did not want to commit any space to retail stores at that time. Defendant's Memorandum in Support of Renewed Motion for Summary Judgment, at p. 4.

Sometime in the middle of December, 1985, Stephen Del Guercio began to work for Alfieri as a leasing representative for the Metro Park building. His primary focus was to obtain tenants for the remaining office space in the building. However, Del Guercio also was responsible for finding tenants for the limited retail space available in Metro Park.

In January, 1986, about six weeks after plaintiff's contact with Schultz, Jerry Landau inquired into the rental of space for a sundry shop. Del Guercio proceeded to negotiate with Landau over a period of approximately three months. By April of 1986, Landau and Del Guercio had apparently agreed in principle on the terms of a lease, and the parties were only awaiting final approval of Landau's Small Business Administration loan before Landau would execute the lease agreement.

Plaintiff re-entered the picture on April 18, 1986, telephoning the defendant to determine if rental space was available. This was plaintiff's first contact with Alfieri since his meeting with Schultz. The evidence also indicates that Schultz never informed Del Guercio about plaintiff's original inquiry into retail space. Del Guercio apparently told plaintiff that someone else was negotiating for the sundry shop space, but Del Guercio asked plaintiff to come in on April 21, 1988, and pick up a standard form lease to review. Plaintiff met with Del Guercio on April 21. The parties discussed the nature of plaintiff's business and the rental of space at Metro Park. Del Guercio advised Chauhan to supply him with copies of Chauhan's recent Federal tax returns, as well as a financial statement. Plaintiff returned the next day with the requested information, and Del Guercio and Chauhan engaged in further discussions. Del Guercio directed his secretary to prepare a proposed lease from a Lease Information Form.

Following the parties' second meeting on April 22, 1986, plaintiff tried to contact Del Guercio to make an appointment to bring in a proposed floor plan, but was told Del Guercio was not available until April 25th. Meanwhile, on April 24, 1986, Landau called to inform Alfieri that he obtained final approval for his Small Business Administration financing and wanted to come in and sign the lease which had previously been negotiated between the parties. Landau came to Metro Park on April 25, 1986 and signed the lease, which was subsequently executed by Schultz on behalf of Alfieri. Plaintiff also came to Metro Park on August 25, presenting his proposed floor plan to Del Guercio. At that time Del Guercio informed plaintiff that the space for the sundry store had already been rented, and told plaintiff he would keep any information provided by plaintiff on file for future reference in the hopes of doing business with plaintiff.

On April 27, 1987, plaintiff filed suit against Alfieri. Plaintiff contends that Alfieri refused to lease retail space to plaintiff based on plaintiff's status as a non-white person. Defendant contends that Schultz originally met with Chauhan merely as a courtesy, and that Schultz had neither the responsibility or intention to lease

space for a sundry store. Defendant further contends that Del Guercio's decision to negotiate with plaintiff in April, 1986, was motivated by a sound business judgment to create an option for Alfieri in case the contemplated lease with Landau fell through. Considering that Alfieri had negotiated with Landau for three months, defendant argues it was only proper to enter the lease agreement with Landau once he was ready to sign, rather than with Chauhan.

## II. DISCUSSION

### A. *Plaintiff's § 1981 Claim*

Plaintiff brings his federal claim of discrimination against Alfieri based on the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] In order to establish a violation of § 1981, a plaintiff must demonstrate purposeful discrimination based upon race. *Crocker v. Boeing Co.*, 662 F.2d 975, 988 (3d Cir. 1981). However, to compensate for the often difficult task of a plaintiff to prove intentional discrimination by direct evidence in civil rights cases, the Supreme Court has articulated a method whereby plaintiff needs only to prove a prima facie case, shifting the burden to the defendant to articulate some legitimate, nondiscriminatory reason for the rejection of plaintiff's application. Should the defendant carry this burden, "plaintiff must then have the opportunity to prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ In a case involving the sale or lease of property, a plaintiff can establish a prima facie case under either 42 U.S.C.

§§ 1981, 1982 or Title VIII of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* by proving:

(1) That he or she is a member of a racial minority;

(2) That he or she applied for and was qualified to rent or purchase certain property or housing;

(3) That he or she was rejected; and

(4) That the housing or rental property remained available thereafter.

See, *e.g., Seldon Apartments v. U.S. Dept. of Housing & Urban Development*, 785 F.2d 152, 159 (6th Cir.1986) (applying elements in actions under Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and Civil Rights Acts, §§ 1981 and 1982); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir.1980) (applying elements in § 1982 action); *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1036 (2d Cir.1979) (applying elements in Title VIII, Fair Housing Action); *Jiminez v. Southridge Co-op, Section I, Inc.*, 626 F.Supp. 732, 734 (E.D. N.Y.1985) (applying same elements to claims under Civil Rights Acts, §§ 1981 and 1982 and Fair Housing Act, 42 U.S.C. § 3601 *et seq.*).

■ In the action at bar, the Court finds that plaintiff has established a prima facie case. Plaintiff is a member of a racial minority, he applied for and was qualified to lease the retail space at Metro Park, plaintiff was rejected in his endeavor, and the retail space remained open, and later was leased to a white person.

■ Because the Court finds that plaintiff has established a prima facie case, the Court must next ascertain if defendant has articulated a legitimate, non-discriminatory reason for its rejection of plaintiff's appli-

1. 42 U.S.C. § 1981 provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   In cases involving property, § 1981 is often read in conjunction with 42 U.S.C. § 1982, which provides:
   All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

cation. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In this regard, defendant contends that at the time of plaintiff's initial contact with Alfieri, through Schultz, in November, 1985, Alfieri was not interested in immediately committing any space to retail leasing given the occupancy figure of the building. Moreover, defendant contends that Mr. Schultz, as an executive vice-president, did not have the responsibility or inclination to negotiate and finalize leasing arrangements for retail space in Metro Park. Finally, defendant argues that by the time plaintiff contacted Alfieri again concerning rental of the retail space in April, 1986, leasing representative Del Guercio was close to finalizing a lease with Landau, and only chose to negotiate with plaintiff to create an option in case the contemplated lease with Landau fell through.

The Court finds Alfieri's proffered explanation to be a legitimate, non-discriminatory reason for its decision not to lease the retail space to plaintiff. Plaintiff does not dispute that Schultz was not the person who ultimately took responsibility for finding tenants for retail space in Metro Park. Nor does plaintiff present any evidence contradicting Alfieri's contention that, at the time of plaintiff's April, 1986, meetings with Del Guercio, Landau was close to entering into a lease for the sundry shop space after some three months of negotiations. Del Guercio's decision to then negotiate with Chauhan in order to create an additional option for Alfieri is well within the realm of reasonable business tactics.

Although the Court finds that Alfieri has articulated a legitimate, non-discriminatory reason for not leasing space to plaintiff, plaintiff still has an opportunity to prove that the legitimate reasons articulated by Alfieri were merely a pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. Chauhan attempts to meet this task by pointing to certain inconsistencies in the accounts of Schultz and Del Guercio, particularly as to the intentions of Alfieri to lease retail space in Metro Park, and as

to the occupancy rates in the building at relevant times in defendants' course of conduct with plaintiff. Plaintiff also points out that Del Guercio entered into negotiations with Landau for rental of sundry shop space barely six weeks after Schultz informed plaintiff that Alfieri could not commit to the leasing of such space at that time.

The Court finds that the inconsistencies pointed out by Chauhan, while perhaps demonstrating some business inefficiency and miscommunication in the operation of Alfieri, do not lend any support to plaintiff's contention that defendants' given reasons for not leasing to plaintiff were merely a pretext for discrimination.

The key period of time is November, 1985, when plaintiff had his initial contact with defendant. Plaintiff walked in off the street and spoke with Schultz, Alfieri's vice-president. The record indicates that Schultz, although without the intention or responsibility for leasing retail space in Metro Park, showed every courtesy to plaintiff with the intention of perhaps doing business with plaintiff in the near future. Soon after Schultz's meeting with plaintiff, Del Guercio was hired as leasing representative for Metro Park. There is no evidence that Schultz spoke with Del Guercio about plaintiff. Indeed, plaintiff can point to no evidence that Del Guercio was ever made aware of plaintiff's expressed interest in leasing retail space.[2]

Because plaintiff cannot show that Schultz's given reason for not leasing space to plaintiff in November, 1985 was merely a pretext for discrimination, it follows that Del Guercio was justified in finally leasing the sundry shop space to Landau in April, 1986, after three months of negotiations with Landau, despite engaging in negotiations with plaintiff.

Therefore, the Court finds, after viewing the record as a whole, that plaintiff could not convince any reasonable jury that defendants' tendered reasons for not leasing space to plaintiff were merely a pretext for discrimination. See *Tigg Corp. v. Dow*

---

**2.** Plaintiff's counsel admitted this point at oral argument.

*Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987) (summary judgment may be granted "if, as a matter of law, viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor.").

In *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.) (in banc), *cert. dismissed*, — U.S. —, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987), the Third Circuit cast some doubt on the appropriateness of rendering summary judgment in a discrimination case once an employee makes out a prima facie case and then seeks to attack as pretextual an employer's articulated non-discriminatory reason for discharge. The Court reversed the District Court's grant of summary judgment, explaining:

> The proffered reason for discharge is a subjective one. The plaintiff challenges the defendant's post-litigation articulation of its intent and the documentary evidence can be viewed as supporting the plaintiff's challenge. Consequently, the issue of pretext turns on [the employer's] credibility and is not appropriate for resolution on a summary judgment motion.

*Id.* at 901. However, in the recent case of *Healy v. New York Life Insurance Co.*, 860 F.2d 1209 (3d Cir.1988), the Third Circuit clarified its holding in *Chipollini*, stating:

> We emphasize that, despite the breadth of the language in *Chipollini*, discrimination cases are inherently fact-bound. Certainly *Chipollini* does not stand for the proposition that summary judgment is *never* available in discrimination actions. Rather, we understand the teaching of *Chipollini* to be that where plaintiffs proffer evidence of pretext and create a genuine issue of material fact as to the credibility of the employer's 'legitimate' business reasons, summary judgment is foreclosed.

*Id.* at 1219. (Emphasis in original). In the case at bar, plaintiff has failed to proffer evidence which creates a genuine issue of material fact as to the credibility of Alfi-

eri's articulated reason for not leasing space to plaintiff.

As plaintiff has failed to satisfy a fundamental element of a viable § 1981 discrimination case, that is, demonstrating that defendant's given reason for not leasing space was merely a pretext for discrimination, plaintiff's § 1981 claim must fail and judgment must be entered in favor of defendant.

### B. *Plaintiff's State Law Claim*

Because the Court finds that plaintiff's federal civil rights claim cannot withstand defendant's summary judgment motion, it is unnecessary and improvident for this Court to exercise pendent jurisdiction over plaintiff's state law claim based on the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* See *Shaffer v. Board of School Directors, etc.*, 730 F.2d 910 (3d Cir.1984) (exercise of pendent jurisdiction depends on a number of factors which may take precedence over considerations of judicial economy).

Therefore, plaintiff's state law claim against defendant must be dismissed for lack of jurisdiction.

### C. *Plaintiff's $2,500 Deposit With The Clerk of the Court*

In an order dated August 5, 1988, this Court ordered plaintiff to deposit the sum of $2,500 with the Clerk of the United States District Court as a condition of plaintiff being permitted to conduct additional discovery, with such money to be awarded to defendants in the event that defendants' motion for summary judgment is granted. After reviewing the record and course of this litigation, the Court will now vacate this part of its August 5, 1988 order.

While the Court finds summary judgment in favor of defendant is warranted, the Court also finds that the additional discovery conducted by plaintiff did not represent an abuse of the judicial process nor was plaintiff's complaint necessarily frivolous. Thus, to impose a $2,500 penalty on plaintiff at this time is not justified, and the Clerk of the Court will be instruct-

ed to return the $2,500 deposit to the plaintiff.

### III. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment for defendant on plaintiff's federal civil rights claim, and the Court will dismiss plaintiff's state law claim for lack of jurisdiction. However, the Court will vacate its previous order of August 5, 1988, and now orders that the sum of $2,500 which plaintiff deposited with the Clerk of the Court be returned to the plaintiff.