Lena **MOBLEY**, Plaintiff

v.

Faith **ROSSELLE**, et al., Defendant(s)

No. CIV.PJM–02–1702.

United States District Court, D. Maryland.

Dec. 30, 2003.

---

Lena Mobley, Oxon Hill, MD, Pro se.

William J. Hickey, Godwin and Hickey LLC, Rockville, MD, Andrew Richard Louis, Thomas M. Hefferon, Goodwin Procter LLP, Washington, DC, for Defendant.

## OPINION

MESSITTE, District Judge.

### I.

Lena Mobley has sued Long Beach Mortgage Company ("Long Beach"), Faith Rosselle ("Rosselle"), and Rosselle Realty Services ("Rosselle Realty") for racial discrimination under the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 et seq. (Count I); the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982 (Count II); and the Maryland Human Relations Act, Maryland Code of 1957, Article 49B § 22 (Count III). The Court considers Mobley's Motion for Summary Judgment, Long Beach's Cross–Motion for Summary Judgment, and Rosselle and Rosselle Realty's Cross–Motion for Summary Judgment.

No hearing is necessary to dispose of this matter. Local R. 105.6 (D.Md.1999). Having considered the pleadings, the Court will DENY Mobley's Motion for Summary Judgment and GRANT the Cross–Motions of the Defendants.

### II.

The case arises out of the sale of a house located at 6526 Joplin, Street, Capitol Heights, Maryland (the "Property"). In June 2001, Long Beach acquired the Property as the result of a foreclosure. Since Long Beach does not ordinarily hold properties, it wanted to sell the Property as quickly as possible. To this end, it retained Rosselle Realty and its principal Rosselle, a Caucasian female, to list and sell the Property. On or about July 5, 2001, the Property was listed for sale at $74,900. On October 5, 2001, Long Beach adjusted its asking price downward to $69,900.

On October 10, 2001, Mobley, who is African–American, made an offer to buy the Property. She proposed a net purchase price of $57,000 and a $500 earnest money deposit. Long Beach rejected this offer because it was too low but invited Mobley to make another offer.

On October 14, 2001, Mobley submitted a second offer, this time proposing a net purchase price of $69,000 ($73,200 minus $4,200 towards closing costs), but again offering $500 down. She also requested 10 days to complete a contingent inspection of the Property. On October 16, 2001, Long Beach agreed to the $69,000 figure, but proposed increasing the earnest money deposit to $2,196, reducing the inspection time to 5 days, and fixing a settlement date of November 21, 2001. On October 23, 2001, Mobley rejected Long Beach's counteroffer by crossing out its proposed settlement date and substituting instead a date of December 10, 2001. Long Beach rejected this change. Mobley did not otherwise reconsider Long Beach's original counteroffer by the October 25 deadline Long Beach had set for acceptance.

On October 30, 2001, BPS Financial Corp. ("BPS") submitted an independent offer for the Property, proposing a net purchase price of $65,000 in cash, a $1,950 earnest money deposit, and a settlement date of November 21, 2001. Long Beach accepted this offer. However, on November 21, 2003, BPS's earnest money check was dishonored and it was unable to provide certified funds to make it good. Long Beach therefore pulled out of the BPS contract and placed the Property back on the market.

On November 30, 2001, an individual named Moses Stafford submitted an offer for the Property, proposing a net purchase price of $69,300, an earnest money deposit of $1,000, and a settlement date of December 31, 2001. Stafford proposed to finance approximately 75% of the purchase price. He asked for no inspection contingency.

On December 3, 2001, before Long Beach had acted on Stafford's offer, Mobley submitted her third offer for the Property, proposing a net purchase price of $69,000, an earnest money deposit of $500, and a settlement date of December 31, 2001. Mobley intended to finance nearly all of the purchase price. Additionally, she again proposed a 10–day inspection contingency. It is also undisputed that, at the time that she made this proposal, Mobley had contracted to buy another house located on 68th street in the District of Columbia.

Judging Stafford's offer to be superior to Mobley's offer of December 3, Long Beach accepted Stafford's offer. The saga, however, was far from over. On December 17, 2001, the Stafford contract also fell through, and once again Long Beach placed the Property back on the market.

On December 19, 2001, engaging a new realtor on her behalf, Mobley submitted her fourth offer for the Property-this time proposing a net purchase price of $68,800 and an earnest money deposit of $500. Again, she included a 10–day inspection contingency clause. Again, she intended to finance a substantial portion of the purchase price. Again, she was simultaneously in the process of negotiating the purchase of another property.

On December 24, 2001, before Long Beach had acted on Mobley's fourth offer, an individual named Brahm Persaud made an offer for the Property-proposing a net purchase price of $69,900 and a $1000 earnest money deposit. He asked for no inspection contingency.

Again, judging Persaud's offer superior, Long Beach chose to accept it instead of Mobley's offer of December 19, 2001. But, as if the drama had not dragged on long enough, on January 28, 2002 the Persaud contract fell through and once again the Property was up for sale.

Some weeks later, in February of 2002, Long Beach bundled the Property together with other similar properties it owned

and sold the package to Fairbanks Capital Corporation ("Fairbanks") in an all cash transaction. The purchase price assigned to the Property that Mobley had been bidding on was $59,950. Long Beach paid no commissions or closing costs. According to Long Beach, had it sold the Property to a private individual, assuming transfer taxes and commissions of 6%, it would have received approximately $64,336 in cash. On April 22, 2002, Fairbanks in turn sold the Property to Greenwood Properties for $45,000. Subsequently, Long Beach loaned $110,000 to two of Greenwood's officers.

On these facts, Mobley claims that when it rejected her offers for the Property, Long Beach discriminated against her on the basis of her race. She contends that Rosselle Realty and Rosselle, as Long Beach's agents, should also be held liable for these discriminatory acts. Mobley seeks damages in the amount of $10 million for pain and suffering, humiliation, embarrassment, emotional distress, psychological pain, and economic damages including, but not limited to, the costs associated with continued storage fees for her belongings. She also requests that the Court enjoin Defendants from discriminating against individuals on the basis of race and that it order them to take appropriate affirmative actions to ensure that further acts of discrimination do not occur.

### III.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56; *see also Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material issue of fact. *Id.* at 323, 106 S.Ct. 2548. Once the moving party satisfies this initial burden, the non-moving party "may not rest upon his allegations," but must present evidence demonstrating the existence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is obliged to view the facts and inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### IV.

All of Mobley's claims come to this: Defendants refused to sell her the Property because she is African–American. *See* 42 U.S.C. § 3604 (prohibiting refusal to sell property based on race); 42 U.S.C. §§ 1981, 1982 (guaranteeing the right to contract and purchase property regardless of race); Maryland Code Article 49B § 22(a) (mirroring the language of 42 U.S.C. § 3604). All three claims require Mobley to present proof of a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir.1990); *Selden Apartments v. United States Department of Housing and Urban Development*, 785 F.2d at 159–160 (6th Cir.1986) (requiring plaintiff to prove a *prima facie* case in FHA and Section 1981 and 1982 claims).

■ Accordingly, to prove a *prima facie* case under any of her theories, Mobley must show that: (1) she was a member of a racial minority; (2) she applied for and was qualified for, or otherwise ready, willing and able to buy the Property on Long Beach's terms; (3) Long Beach refused to

sell the Property to her; and (4) the Property remained available for sale thereafter on terms similar to what she offered. *Pinchback v. Armistead Homes Corp.,* 907 F.2d 1447, 1451, *citing Selden Apartments v. United States Department of Housing and Urban Development,* 785 F.2d 152, 159.

Mobley contends that she has established a *prima facie* case of discrimination. She is African–American and, therefore, a member of a protected class. Her offers to purchase the Property were rejected on three occasions when the Property was available for sale. She was, she says, qualified to purchase the home and made bona fide offers to do so. And finally, she contends, Defendants offered white purchasers terms different from those offered to her. Long Beach, she suggests, ultimately sold the Property to a corporation of white individuals for $45,000, whereas it refused to sell it to her for $73,200. Mobley argues that Defendants have provided no viable defense and that no genuine issue exists as to any material fact.

Long Beach argues that Mobley was never ready, willing and able to buy the Poperty on its terms. Each of her offers was for less than the listing price, each provided for less than the $1,000 minimum earnest money deposit it asked for, and each contained a 10–day inspection contingency that was unacceptable to it.

For their part, Rosselle and Rosselle Realty argue that they were merely conduits in the transactions, transmitting offers from prospective purchasers. With respect to the Fair Housing Act claim, they submit that there is no evidence showing that either of them as listing agent had the power or authority to accept or reject offers or purchases, nor is there evidence suggesting that either in any way influenced Long Beach's decisions. As such, they could not have discriminated against Mobley.

With respect to the Civil Rights Act claim, Roselle and Rosselle Realty argue that there is no evidence that suggests that they intentionally discriminated against Mobley on the basis of her race. There are no material facts demonstrating direct discriminatory intent, a prerequisite for a *prima facie* case. *See General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 382–391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

Finally, with respect to the Maryland Human Rights Act claim, Rosselle and Rosselle Realty argue that Mobley has failed to exhaust her administrative remedies, as required by Md.Code Ann., Art. 49B § 33 ("... an aggrieved person may commence a civil action under this subsection not sooner than 130 days after a complaint has been filed under § 27 of this subtitle"). Since Mobley has never filed administrative charges, this claim, they say, must also fail.

Mobley responds that Defendants' Cross–Motions for Summary Judgment are untimely because they were filed on September 29, 2003, 32 days after she filed her Motion for Summary Judgment. She also complains of Defendants' conduct with respect to certain discovery matters and with respect to Defendants' request for an extension of time. Long Beach submits that its Opposition was timely and that Mobley's complaints about Defendants' conduct are irrelevant to the viability *vel non* of their summary judgment motions. Defendants submit that Mobley has failed to address the issues of law raised by them in their motions.

## V.

The Court disposes first of Mobley's contention that Defendants' Oppositions and Cross–Motions to her Motion for Sum-

mary Judgment were untimely. On September 12, 2003, the Court granted Defendants' Motion for Extension of Time giving them until September 29, 2003 to file their Oppositions. Hence, Defendants' filings on September 29 were timely. With respect to Mobley's complaints about discovery, the Court agrees with Defendants that these complaints here have no bearing upon the pending summary judgment motions.

■ The Court turns to Mobley's substantive claims. The Court finds as a matter of law that Mobley has failed to make a *prima facie* showing as to any of her theories of recovery. Nothing in the record suggests that she was ever ready, willing and able to buy the Property on the terms specified by Long Beach. *See Pinchback v. Armistead Homes Corp.* 907 F.2d at 1451 (a plaintiff must show she was ready, willing and able to purchase on the seller's terms in order to prove her *prima facie* case); *Mitchell v. Century 21 Rustic Realty*, 233 F.Supp.2d 418 (plaintiffs failed to establish their *prima facie* case because though qualified they never satisfied the terms of the seller's offer). None of the terms she proposed met those of Long Beach. Mobley consistently offered a smaller earnest money deposit than Long Beach sought. She consistently included a 10–day inspection contingency despite the fact that Long Beach said it would only accept a 5–day contingency. And she consistently proposed closing dates that were unacceptable to Long Beach. Each of the offers Long Beach accepted differed from Mobley's in that, among other things, they consisted of higher earnest money deposits, did not contain 10–day inspection contingencies, and/or established shorter closing dates acceptable to Long Beach.

## VI.

The Court therefore DENIES Mobley's Motion for Summary Judgment and GRANTS the Cross–Motions for Summary Judgment of the Defendants.

A separate Order will be entered.